POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Zachari Pirbudagov
and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EYAD KARZOUN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LUNA INNOVATIONS INCORPORATED, SCOTT A. GRAEFF, EUGENE J. NESTRO, and GEORGE GOMEZ-QUINTERO,<br><br>Defendants. | Case No. 2:24-cv-02630-CBM-KS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ZACHARI PIRBUDAGOV FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**<br><br>DATE:  July 2, 2024<br>TIME:  10:00 a.m.<br>JUDGE:  Consuelo B. Marshall<br>CTRM:  8D |

| | |
|---|---|
| LEE MICHAEL THOMPSON, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>LUNA INNOVATIONS INCORPORATED, SCOTT A. GRAEFF, EUGENE J. NESTRO, and GEORGE GOMEZ-QUINTERO,<br><br>      Defendants. | Case No. 2:24-cv-04068-CBM-KS |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................................2

II.     STATEMENT OF FACTS .........................................................................................3

III.    ARGUMENT .............................................................................................................9

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ......................................................................................9

    B.    PIRBUDAGOV SHOULD BE APPOINTED LEAD PLAINTIFF ............10

        1.    Pirbudagov Is Willing to Serve as Class Representative.......................11

        2.    Pirbudagov Has the "Largest Financial Interest"...................................12

        3.    Pirbudagov Otherwise Satisfies the Requirements of Rule 23 .............13

        4.    Pirbudagov Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses..................................16

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..................................................................................................17

IV.     CONCLUSION.........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................ 14

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................... 13

*In re Solar City Corp. Sec. Litig.*,
   No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ...................... 14

*Knox v. Yingli Green Energy Holding Co.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................... 12, 13

*Lax v. First Merchants Acceptance Corp.*
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ..................................... 12

*Mulligan v. Impax Lab'ys, Inc.*,
   No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ........................... 9

*Nicolow v. Hewlett Packard Co.*,
   No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ............................. 13

*Osher v. Guess?, Inc.*,
   No. CV01-00871LGB(RNBX), 2001 WL 861694 (C.D. Cal. Apr. 26,
   2001) ............................................................................................................... 17

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ................. 9, 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 15

*Tai Jan Bao v. SolarCity Corp.*,
   No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ................... 14

**Statutes**

15 U.S.C. §78j(b) ........................................................................................................... 10

15 U.S.C. §78t(a) ........................................................................................................... 10

15 U.S.C. § 78u-4.................................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .......................................................*passim*

**Rules and Regulations**

17 C.R.F. § 240.10b-5 ................................................................................................... 10

Fed. R. Civ. P. 23 .........................................................................................................*passim*

Fed. R. Civ. P. 42 .................................................................................................. 1, 2, 9, 10

Movant Zachari Pirbudagov ("Pirbudagov")[1] respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Pirbudagov as Lead Plaintiff on behalf of a class (the "Class") consisting of persons or entities who purchased or otherwise acquired publicly traded Luna Innovations Incorporated ("Luna" or the "Company") securities between May 16, 2022 and April 19, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[2]

---

[1] Pirbudagov pursues claims in this litigation both on his own behalf and on behalf of his wife, Alla Pirbudagov, from whom he has received a valid assignment of those claims. *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A at *2

[2] On April 1, 2024, the first-filed of the Related Actions was filed in this Court, styled *Eyad Karzoun v. Luna Innovations Incorporated et al.*, No. 2:24-cv-02630 (the "*Eyad* Action"), alleging a class period including persons or entities who purchased or otherwise acquired publicly traded Luna securities between August 11, 2023 and March 25, 2024, inclusive. *See* Dkt. No. 1 at 1 ¶ 1. On May 15, 2024, a second action alleging substantially the same wrongdoing as the *Eyad* Action against the same defendants was filed in this Court, styled *Lee Michael Thompson v. Luna Innovations Incorporated et al.*, No. 2:24-cv-04068 (the "*Thompson* Action"), alleging a larger class period including persons or entities who purchased or otherwise acquired publicly traded Luna securities between May 16, 2022 and April 19, 2024, inclusive. *See Thompson* Action, Dkt. No. 1 at 1 ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the *Thompson* Action.

## I.     PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  Luna investors, including Pirbudagov, incurred significant losses following the disclosures of the alleged fraud, which caused the prices of Luna securities to fall sharply, damaging Pirbudagov and other Luna investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the Exchange Act by the same defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Pirbudagov purchased 1,986 shares of Luna common stock, expended $17,378 on his transactions in publicly traded Luna securities, retained 1,986 of his shares of Luna common stock as of March 12, 2024 and March 25, 2024, when the truth regarding Defendants' alleged fraud began to emerge (*see* Dkt. No. 1 at 11-15 ¶¶ 28-33; *Thompson* Action, Dkt. No. 1 at 6-9 ¶¶ 25-30), and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $11,371.  *See*

Pafiti Decl., Ex. B at *2. Accordingly, Pirbudagov believes that he has the largest financial interest in the relief sought in this litigation. Beyond his considerable financial interest, Pirbudagov also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Pirbudagov has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Pirbudagov respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Pirbudagov as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

## II.     STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Luna is a technology company that is focused on fiber optics. Dkt. No. 1 at 2 ¶ 7; *Thompson* Action, Dkt. No. 1 at 2 ¶ 7. It creates products targeted towards the aerospace, automotive, and communications industries, among others. Dkt. No. 1 at 2 ¶ 7; *Thompson* Action, Dkt. No. 1 at 2 ¶ 7.

The Company's common stock trades on the NASDAQ exchange under the ticker symbol "LUNA." Dkt. No. 1 at 2 ¶ 8; *Thompson* Action, Dkt. No. 1 at 2 ¶ 8.

Throughout the Class Period, Defendants made materially false and/or misleading statements because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them: (1) Luna's financial statements from May 16, 2022 through and including November 14, 2023 contained unearned revenues that should not have been recognized; (2) Luna would need to restate financial statements that it filed during May 16, 2022 through and including November 14, 2023; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all times. *See Thompson* Action, Dkt. No. 1 at 3-6 ¶¶ 17-24; *see also* Dkt. No. 1 at 4-11 ¶¶ 17-27.

On March 12, 2024, after the market closed, Luna filed with the U.S. Securities and Exchange Commission ("SEC") a current report on Form 8-K announcing it would need to restate its financial statements for the second and third quarters of 2023 (the "First Restatement Announcement") because the Company improperly recognized revenues during these periods. *Thompson* Action, Dkt. No. 1 at 6 ¶ 25; *see also* Dkt. No. 1 at 11 ¶ 28.

The First Restatement Announcement stated, *inter alia*, that "[a] Special Committee of the Board of Directors (the 'Board') of Luna . . . is conducting an independent review, with the assistance of external legal and financial advisors, of certain transactions for which revenue was recognized in the second and third quarters of 2023 that did not qualify for revenue recognition under U.S. generally accepted accounting principles"; that "the Audit Committee . . . of the Board, based on preliminary findings of the review, and after consultation with, the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued unaudited interim condensed consolidated financial statements for the quarters ended June 30, 2023, and September 30, 2023, as previously filed with the [SEC], should no longer be relied upon and should be restated"; that, "[i]n connection with the independent review, the Company has identified material weaknesses in its internal control over financial reporting that existed as of June 30, 2023, and September 30, 2023, and has re-evaluated the effectiveness of the Company's disclosure controls and procedures as of those dates"; and that, "[b]ased on this assessment, the Company's disclosure controls and procedures were ineffective for the quarters ended June 30, 2023, and September 30, 2023." Dkt. No. 1 at 11-12 ¶ 29; *Thompson* Action, Dkt. No. 1 at 6-7 ¶ 26.

Also on March 12, 2024, after the market closed, the Company filed with the SEC a late filing notice on Form NT 10-K (the "Late Filing Notice"). Dkt. No. 1 at 12 ¶ 30; *Thompson* Action, Dkt. No. 1 at 7 ¶ 27. The Late Filing Notice stated, *inter alia*, that

"[t]he Company is unable to file the Form 10-K within the prescribed time period without unreasonable effort or expense"; that "[t]he Company currently anticipates reporting material weaknesses in internal controls related to evaluating customer arrangements for proper revenue recognition and other controls and will be working to remediate these issues"; that "[a]dditional time is needed to complete tasks and steps necessary to prepare and finalize the Company's annual financial statements and other disclosures required to be included in the Form 10-K, as well as to complete the ongoing review of recognition of revenue"; that "[t]here can be no assurance as to how long the review will take or when the Company will be able to complete the preparation and filing of the Form 10-K"; that "the Company currently does not expect to file the Form 10-K within the extension period of fifteen calendar days provided under Rule 12b-25 under the [Exchange Act], as amended"; and that "the review is ongoing and the Company has not yet determined the full extent of the impact on the second and third quarters of 2023 and whether and to what extent there may be an impact on financial statements for any other periods."  Dkt. No. 1 at 12-13 ¶ 30; *Thompson* Action, Dkt. No. 1 at 7-8 ¶ 27.

On this news, the price of Luna stock fell $2.24 per share, or 35.78%, to close at $4.02 on March 13, 2024.  Dkt. No. 1 at 13 ¶ 31; *Thompson* Action, Dkt. No. 1 at 8 ¶ 28.

Then, on March 25, 2024, after the market closed, the Company filed with the SEC a current report on Form 8-K (the "March 25 Form 8-K") which announced that Defendant Scott A. Graeff ("Graeff"), who had served as the Company's Chief Executive Officer and

President, had retired, effective immediately. *See* Dkt. No. 1 at 13 ¶ 32; *Thompson* Action, Dkt. No. 1 at 8 ¶ 29. Upon information and belief, Defendant Graeff retired as a result of the misconduct detailed in the complaints in the Related Actions. *See* Dkt. No. 1 at 13 ¶ 32; *Thompson* Action, Dkt. No. 1 at 8 ¶ 29. The March 25 Form 8-K stated, *inter alia*, that "[a]fter consideration of various alternatives, including termination with or without cause, the Board exercised its discretion in determining that it was in the best interests of the Company and its stockholders to accept Mr. Graeff's retirement and provide benefits to Mr. Graeff in exchange for his continued assistance and compliance with other obligations as set forth in a separation agreement (the 'Separation Agreement'), which the Company and Mr. Graeff entered into on March 24, 2024"; and that "[t]he Separation Agreement also contains certain covenants that are binding upon Mr. Graeff, including a covenant to cooperate with the Company in connection with any investigation of any claims or demands asserted against it and with respect to matters arising from events that occurred during his period of employment with the Company." Dkt. No. 1 at 13-14 ¶ 32; *Thompson* Action, Dkt. No. 1 at 8-9 ¶ 29.

On this news, the price of Luna stock fell by $0.41 per share, or 11.54%, to close at $3.14 on March 26, 2024. Dkt. No. 1 at 15 ¶ 33; *Thompson* Action, Dkt. No. 1 at 9 ¶ 30.

On April 19, 2024, Luna filed its Form 8-K which announced that, in addition to non-reliance on its financial reports for the second and third quarters of 2023, investors should no longer rely on its previously filed financial statements contained in its financial

reports for the first, second, and third quarters of 2022, for the year ended December 31, 2022, and for the first quarter of 2023 (the "Second Restatement Announcement") because the Company improperly recognized revenues in each of these reports too. *Thompson Action*, Dkt. No. 1 at 9-10 ¶ 31.

The Second Restatement Announcement stated, *inter alia*, that "the Company is assessing the effect of the matters identified to date on the Company's internal control over financial reporting and its disclosure controls and procedures"; that, "[i]n connection with the review and the identification of the accounting errors described in this report, the Audit Committee identified material weaknesses in the Company's internal control over financial reporting that existed during the periods covered by each of the Affected Financial Statements, and has reevaluated the effectiveness of the Company's disclosure controls and procedures as of each quarter end included in the Affected Financial Statements (the 'Affected Balance Sheet Dates')"; that, "[b]ased on this assessment, the Audit Committee has determined that the Company's disclosure controls and procedures were ineffective as of each of the Affected Balance Sheet Dates"; that "the Company has not yet determined the full extent of the impact on the Affected Financial Statements and whether and to what extent there may be an impact on financial statements for any other periods"; that, "[a]ccordingly, there can be no assurance as to the actual effects of the restatements or that the Company will not determine to restate any financial statements in addition to the Affected Financial Statements or with respect to any additional accounting

errors"; and that "the Company cannot at this time estimate when it will file its restated financial statements[.]" *Id.* at 10-11 ¶ 32.

This news drove the price of Luna shares down $0.36 (12.8%) during the two trading days ended April 22, 2024. *Id.* at 12 ¶ 33.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Pirbudagov and other Class members have suffered significant losses and damages. *See id.* at 12 ¶ 34; Dkt. No. 1 at 15 ¶ 34.

## III.   ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Lab'ys, Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *2-3 (N.D. Cal. July 2, 2013).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(B)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder, by the same Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

## B.    PIRBUDAGOV SHOULD BE APPOINTED LEAD PLAINTIFF

Pirbudagov should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to

do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Pirbudagov satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. Pirbudagov Is Willing to Serve as Class Representative

On April 1, 2024, counsel for plaintiff in the first-filed of the Related Actions caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action lawsuit had been filed on behalf of Luna investors, and which advised investors in Luna securities that they had until May 31, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. C at *2.

Pirbudagov has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. D at *2-3. Accordingly, Pirbudagov satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Pirbudagov Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Pirbudagov has the largest financial interest of any Luna investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted));

*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at \*4 (N.D. Cal. Mar. 4, 2013) (same); *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at \*4.

During the Class Period, Pirbudagov: (1) purchased 1,986 shares of Luna common stock; (2) expended $17,378 on his transactions in publicly traded Luna securities; (3) retained 1,986 of his shares of Luna common stock as of March 12, 2024 and March 25, 2024, when the truth regarding Defendants' alleged fraud began to emerge (*see* Dkt. No. 1 at 11-15 ¶¶ 28-33; *Thompson* Action, Dkt. No. 1 at 6-9 ¶¶ 25-30); and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $11,371 in connection with his Class Period transactions in publicly traded Luna securities. *See* Pafiti Decl., Ex. B at \*2. To the extent that Pirbudagov possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Pirbudagov Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil

Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 WL 1129344, at *4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Pirbudagov's claims are typical of those of the Class. Pirbudagov alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Luna, or by omitting to state material facts necessary to make the statements they did make not misleading. Pirbudagov, like other Class members, purchased publicly traded Luna securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Luna's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Pirbudagov is an adequate representative for the Class. Here, Pirbudagov has submitted a sworn Certification declaring his commitment to protect the interests of the Class. *See* Pafiti Decl., Ex. D at *2-3. There is no evidence of antagonism or conflict between Pirbudagov's interests and those of the Class, and Pirbudagov's significant

financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy. Moreover, Pirbudagov has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Pirbudagov is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation.

Further demonstrating his adequacy, Pirbudagov has submitted a sworn Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. E at 1-4 ¶¶ 1-7, 9-11.

### 4. Pirbudagov Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Pirbudagov as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Pirbudagov's ability and desire to fairly and adequately represent the Class has been discussed above. Pirbudagov is not aware of any unique defenses Defendants could raise

that would render him inadequate to represent the Class.  Accordingly, Pirbudagov should be appointed Lead Plaintiff for the Class.

### C.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with a Lead Plaintiff's selection only when necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *Osher*, 2001 WL 861694, at *4 ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, Pirbudagov has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Pafiti Decl., Ex. F at 1-11.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.* at 1.  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action

involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* at 2. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 1-11. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 2-3.

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Pirbudagov's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Pirbudagov's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Pirbudagov respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Pirbudagov as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  May 31, 2024                          Respectfully submitted,

                                              POMERANTZ LLP

                                              */s/ Jennifer Pafiti*
                                              Jennifer Pafiti (SBN 282790)
                                              1100 Glendon Avenue, 15th Floor
                                              Los Angeles, California 90024

Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Zachari Pirbudagov
and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant Zachari
Pirbudagov*

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Jennifer Pafiti
Jennifer Pafiti