Lucas E. Gilmore, Bar No. 250893
Reed Kathrein, Bar No. 139304
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: lucasg@hbsslaw.com
reed@hbsslaw.com

*Lead Counsel and Counsel for*
*Lead Plaintiff George Lang*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LUNA INNOVATIONS INCORPORATED SECURITIES LITIGATION<br><br>This Document Relates To: ALL ACTIONS | Master File No. 2:24-cv-02630-CBM-KS<br><br>CLASS ACTION<br><br>**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR THE VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. JURISDICTION AND VENUE .......... 3
III. PARTIES .......... 4
    A. Lead Plaintiff .......... 4
    B. Defendants .......... 4
IV. SUBSTANTIVE ALLEGATIONS .......... 6
    A. Luna and its Business .......... 6
    B. Luna's Reporting Obligations .......... 8
    C. Defendants' Materially False and Misleading Statements Issued During the Class Period .......... 10
        1. May 16, 2022: 1Q 2022 Financial Results .......... 10
        2. August 11, 2022: 2Q 2022 Financial Results .......... 13
        3. November 10 2022: 3Q 2022 Results .......... 15
        4. March 16, 2023: 4Q 2022 and Full Year 2022 Financial Results .......... 17
        5. April 20, 2023: Luna's 2023 Proxy Statement .......... 19
        6. May 9, 2023: 1Q 2023 Financial Results .......... 21
        7. August 10, 2023: 2Q 2023 Financial Results .......... 22
        8. November 14, 2023: 3Q 2022 Financial Results .......... 23
V. THE TRUTH BEGINS TO EMERGE .......... 25
VI. POST-CLASS PERIOD REVELATIONS CONFIRMING DEFENDANTS' FRAUD .......... 32
VII. DEFENDANTS' CONTINUING FRAUD ON INVESTORS BY FAILING TO RESTATE AND REPORT ITS ONGOING FINANCIAL RESULTS .......... 33

VIII. PLAINTIFF'S CLASS ACTION ALLEGATIONS ..... 36
COUNT I FOR VIOLATIONS OF SECTION 10(B) AND RULE 10B-5 (B) PROMULGATED THEREUNDER ..... 39
COUNT II FOR VIOLATIONS OF SECTION 10(B) AND RULE 10B-5 (A) AND (C) PROMULGATED THEREUNDER ..... 41
COUNT III ..... 43
VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT ..... 43
IX. PRAYER FOR RELIEF ..... 44
X. JURY TRIAL DEMANDED ..... 44

Lead Plaintiff George Lang ("Plaintiff"), by and through his undersigned counsel, respectfully submits this Amended Consolidated Class Action Complaint ("Complaint") alleging claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder ("Rule 10"). Specifically, Plaintiff alleges Defendants: (i) made false and/or misleading statements and omissions in violation of Rule 10(b)5; and (ii) employed a scheme, device or artifice to defraud and engaged in an act or practice that operated as a fraud or deceit in violation of Rules 10(a) and (c).

Plaintiff brings these claims on behalf of himself and all persons and entities other than Defendants who purchased or otherwise acquired publicly traded Luna Innovations Incorporated ("Luna" or the "Company") securities between May 16, 2022 and April 19, 2024, both dates inclusive (the "Class Period"). This group is collectively referred to as the "Class." Excluded from the Class are Defendants, their families, and their affiliates.

Plaintiff alleges the following information based on his personal knowledge. All other allegations in this Complaint are based upon the ongoing investigation undertaken by Lead Counsel, including their review and analysis of (i) the Company's public filings with the SEC; (ii) research reports from securities and financial analysts; (iii) the Company's press releases and reports; (iv) the Company's website and marketing materials; (v) media reports concerning the Company and other facts related to this action; (vi) price and volume data for Company securities; (vii) consultation with experts and investigators; and (viii) additional data concerning the Company and industry as identified herein.

## I. INTRODUCTION

1. This is a securities fraud class action concerning a brazen accounting fraud scheme orchestrated by Luna and its most senior executives to deceive its

investors. For a period of nearly two years, Luna's top management manipulated the Company's books by improperly recognizing and misstating revenue on certain commercial transactions. The fraudulent scheme had the intended effect of misleading investors by boosting the Company's publicly reported financial results and concealing the true state of Luna's financial health. Defendants' artifice in turn caused the price of Luna's publicly traded securities to be artificially inflated throughout the entirety of the Class Period. In carrying this fraud, Defendants: (i) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in violation of Rule 10(b)5; and (ii) employed a device, scheme, or artifice to defraud and engaged in an act or practice that operated as a fraud or deceit in violation of Rules 10(a) and (c).

2. As detailed below, the revelation of Luna's fraudulent and deceptive practices had a devastating impact on Luna's investors. After admitting to falsifying its financial statements over a nearly two-year period, the Company's stock price has plummeted, going from trading at a Class Period high of $10.39 per share on March 3, 2023 to below $2.00 per share at the end of the Class Period, representing an 80% decline and wiping out over $290 million in shareholder value. Luna fails to offer current shareholders any prospect of an immediate turnaround. The Company is now rudderless, as the entirety of Luna's management team has either been terminated or forced out because of their involvement in the alleged accounting fraud scheme. These key executive departures include the Company's longtime Chairman Richard Roedel, Chief Executive Officer Scott A. Graeff, Chief Financial Officer George Gomez-Quintero, Chief Technology Officer and Executive Vice President of Corporate Development Brian Soller, and seven additional employees.

3. And the fraudulent cover up at Luna continues. In a transparent effort to cover up its misconduct and thwart the prosecution of this case, to date, the Company has refused to file its restated financials for the impacted period and declined to release the findings and conclusions of its internal investigation. In further violation of the securities laws, Luna has stopped publicly reporting its financial results. Specifically, following the Company's initial March 12, 2024 admission of accounting errors and a lack of internal controls related to improper revenue reporting, Luna has failed to file its 2023 annual report and two most recent quarterly reports. Despite receiving multiple delinquency notices from Nasdaq, Luna has not provided Nasdaq with a plan to file accurate financial reports. As a result, the Company is now on the brink of being delisted from the exchange.[1]

4. A bank robber cannot evade the law by locking himself in the vault. This class action, filed on behalf of Luna's aggrieved investors, seeks to hold the Company and its Executive Defendants accountable for both their past wrongful acts and their continuing fraud.

## II. JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

---

[1] Following Luna's repeated failure to timely submit its restatements, Lead Counsel has conferred with Defendants' counsel about scheduling the due date for an amended complaint to follow submission of the restatement, to avoid the filing of duplicative and incomplete complaints. Luna declined to do so. As a result, Lead Counsel reserves the right to seek leave to amend this complaint following Luna's release of its restatements.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III. PARTIES

### A. Lead Plaintiff

9. Lead Plaintiff George Lang, as set forth in his certification (ECF No. 11-2), which is incorporated by reference herein, purchased Luna common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

### B. Defendants

10. Defendant Luna Innovations is a technology company that is focused on fiber optics. It creates products targeted towards the aerospace, automotive, and communications industries, among others.

11. Luna Innovations is incorporated in Delaware and its principal executive offices are located at 301 1st Street, SW, Suite 200, Roanoke, VA 24011. The Company's common stock trades on the Nasdaq exchange under the ticker symbol "LUNA."

12. Defendant Scott A. Graeff ("Graeff") served as the Company's Chief Executive Officer ("CEO") and President from prior to the Class Period until March 25, 2024.

13. Defendant Eugene J. Nestro ("Nestro") served as the Company's Chief Financial Officer ("CFO") from prior to the Class Period until October 16, 2023.

14. Defendant George Gomez-Quintero ("Gomez-Quintero") served as the Company's CFO beginning on October 17, 2023. According to Luna's public disclosures, on April 29, 2024, Defendant Gomez-Quintero notified the Company of his resignation, effective May 1, 2024.

15. Defendants Graeff, Nestro, and Gomez-Quintero are collectively referred to herein as the "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

17. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of

agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Luna Innovations under *respondeat superior* and agency principles.

19. Defendant Luna and the Individual Defendants are collectively referred to herein as "Defendants."

## IV. SUBSTANTIVE ALLEGATIONS

### A. Luna and its Business

20. Luna claims to be a global leader in fiber optics. The Company provides fiber optic test, measurement, and control products worldwide. The Company offers test and measurement equipment for fiber optic components and sub-assemblies; polarization control products, including components, modules, and instruments to measure, manage, and control polarization and group delay in fiber optic networks; tunable lasers; and single frequency lasers.

21. The Company primarily markets its fiber optic test, measurement, and control products to telecommunications companies, defense agencies, government system integrators, researchers, original equipment manufacturers, distributors, testing labs, and strategic partners directly, as well as through manufacturer representative organizations, partner and distribution channels, technical sales engineers, value added resellers, and independent sales representatives.

22. According to its website, its "key industries" are communications, aerospace, automotive, civil and geotechnical, energy, and industrial and manufacturing. In the automotive industry, its website states as follows:

> As the automotive industry transitions to electrical drivetrains and advanced lightweight materials, new approaches to test and manufacturing are needed to deliver new technologies to the market that are safe, reliable and competitive.

> Luna's ODiSI high-definition distributed sensing system is a new and valuable tool for the integration of new lightweight materials and electrical powertrains. Low-profile, flexible fiber optic sensors can be applied to challenging geometries, deliver complete data maps, and are immune to the interference and hazards associated with instrumenting electrical power components.
>
> When very precise density or thickness measurement is required, whether for quality control or for process monitoring, Luna's T-Gauge terahertz imaging is able to provide data and a level of accuracy not available with legacy NDT technologies.

23. ODIiSI is an abbreviation for Optical Distributed Sensor Interrogator.[2] An interrogator looks like this:




24. "T-Guage terahertz imaging"[3] refers to a control unit ("TCU") that "deliver[s] precisely controlled terahertz waveforms for fast, precise, and reliable operation. The T-Ray 5600 is ideal for thickness measurements, measurements of extruded shapes, density and basis weight measurements and ultra high speed measurements of moving samples." It looks like this:

---

[2] *See* https://lunainc.com/news/luna-innovations-introduces-major-new-enhancements-its-odisi-sensing-platform.

[3] A terahertz is a unit of measure of frequency that is equal to 1 trillion hertz.




**B. Luna's Reporting Obligations**

25. Periodic financial reports such as annual reports and quarterly reports are essential for companies to maintain transparency, accountability, and attract investors. These reports are critical to investors because they provide a snapshot of a company's financial health, allowing stakeholders to assess its performance and make informed decisions. By regularly disclosing information about revenues, expenses, profits, and assets, companies build trust with investors, creditors, and other interested parties. Additionally, periodic reports identify risks that investors should be aware of, including business trends and potential issues concerning compliance with regulatory requirements.

26. The most significant periodic report is a company's annual report. These reports provide a comprehensive overview of a company's financial performance, operations, and future prospects. Significantly, the annual reports of publicly traded domestic companies are audited by an independent public accountant that is registered as a public accounting firm with the Public Company Accounting Oversight Board, as provided for in Section 102 of the Sarbanes-Oxley

Act of 2002. Independent audits play a vital role in ensuring the accuracy and reliability of annual reports. By examining a company's financial statements and internal controls, auditors provide an objective assessment of its financial health.

27. As a publicly traded company, under the U.S. federal securities laws and SEC regulations Luna is subject to substantial disclosure requirements in its periodic reports required to be filed with the SEC, such as the Company's annual report filed on Form 10-K and quarterly report on Form 10-Q. These reports have strict filing deadlines and the consequences for missing a deadline could have a wide range of impacts on the Company beyond damage to its reputation in the market.

28. The failure to file a required SEC report on time constitutes a violation of Section 13(a) of the Exchange Act, and the SEC could suspend trading in the company's securities or institute an administrative proceeding against the late filer seeking, among other things, revocation of the company's registration under the Exchange Act.

29. In addition, Nasdaq has a strict policy regarding companies that fail to submit their periodic reports on time. If a company misses a filing deadline, Nasdaq will send a notification of deficiency and provide the company 60 days to submit a plan of compliance. If the company fails to comply, Nasdaq may initiate delisting procedures. While the company has the right to appeal the delisting decision to a Nasdaq Hearings Panel, an appeal does not stop the delisting process.

30. Under applicable Nasdaq rules, companies facing delisting must issue a press release announcing the deficiency and provide details about their plan to become current with their filings. Nasdaq will also add an "E" to the company's trading symbol to indicate the filing delinquency.

31. To avoid delisting, companies must provide the Nasdaq Hearings Panel with an estimated date for compliance, a schedule of actions, and details about any necessary adjustments or restatements.

**C. Defendants' Materially False and Misleading Statements Issued During the Class Period**

**1. May 16, 2022: 1Q 2022 Financial Results**

32. The Class Period begins on May 16, 2022, when Luna issued a press release filed with the SEC on Form 8-K, which announced its financial results for the first quarter of fiscal year 2022, ending on March 31, 2022. The press release reported, in relevant part:

- Total revenues of $22.5 million for the three months ended March 31, 2022, up 7% compared to the three months ended March 31, 2021
- Gross margin of 64% for the three months ended March 31, 2022, compared to 58% for the three months ended March 31, 2021
- Operating loss of $2.4 million for the three months ended March 31, 2022, compared to operating loss of $1.6 million for the three months ended March 31, 2021
- Net income of $9.6 million for the three months ended March 31, 2022, which includes the gain on sale of Luna Labs, compared to net loss of $0.3 million for the three months ended March 31, 2021

33. The press release stated the 7% quarter over quarter revenue increase was "primarily due to revenue generated by the Lios acquisition."

34. The press release further stated that the gross margin increase was "driven primarily by favorable product mix."

35. In the press release, Defendant Graeff stated, "I'm very pleased with our first-quarter performance as the Luna team delivered a solid start to 2022. [] We surpassed the top end of the Q1 revenue guidance we provided in March, while

completing significant events including the divestiture of Luna Labs, the acquisition of Lios and the complete absorption of OptaSense into our operations."

36. In the press release, Graeff continued to attribute the Company's favorable quarterly results to the Company's strategic decisions and sales execution, stating, "As a result of the moves we've made, today Luna is a company with blue-chip customers, over a dozen of which are long-term, resulting in many large, multi-unit purchase orders. For example, we've gone from shipping one or two boxes to being completely integrated into Lockheed Martin's F-35 global program. I'm incredibly proud of the team for managing through the numerous puts and takes over the past six quarters, as we solidify Luna as a clear leader and a company fully focused on Enabling the Future with Fiber."

37. Later, on a May 16, 2022 earnings call hosted by Defendants Graeff and Nestro, Defendant Graeff reiterated that Luna's revenue growth was "above the first quarter guidance range we provided on our Q4 call," and stated, "In communications testing, revenues grew double digits compared to Q1 2021, driven by record sales for Luna's high speed communications test instruments, the OVA and OBR."

38. In the earnings call, Defendant Nestro attributed revenue increases "primarily due to revenue generated by our LIOS acquisition."

39. On that same day, Luna filed its financial statements on Form 10-Q for the quarter ended March 31, 2022 (the "1Q22 Report"). The Company reported revenues of about $22.48 million and net income of about $9.58 million for the quarter.

40. The 1Q22 Report attached Sarbanes-Oxley certifications by Defendants Graeff and Nestro assuring investors that "this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such

statements were made, not misleading with respect to the period covered by this report."

41. The certifications also assured investors that Luna's disclosure controls and procedures and internal control over financial reporting "provide[s] reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles[.]" The 1Q22 Report separately assured investors that the Company's disclosure controls and procedures are "effective.":

> We maintain "disclosure controls and procedures," as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), which are controls and other procedures that are designed to provide reasonable assurance that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms. Disclosure controls and procedures also include, without limitation, controls and procedures designed to provide reasonable assurance that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the company's management, including its principal executive and principal financial officers, as appropriate to allow timely decisions regarding required disclosure.
>
> Management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. In addition, the design of any system of controls also is based in part upon certain assumptions about the likelihood of future events, and there can be no assurance that any design will succeed in achieving its stated goals under all potential future conditions; over time, controls may become inadequate because of changes in conditions, or the degree of compliance with policies or procedures may deteriorate. Because of the inherent limitations in a control system, misstatements due to error or fraud may occur and not be detected.
>
> Under the supervision and with the participation of our management, including our President and Chief Executive Officer and our Chief Financial Officer, we evaluated the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this quarterly report. Based on this evaluation, our President and Chief Executive Officer and our Chief Financial Officer have

concluded that, as of March 31, 2022, our disclosure controls and procedures were effective.

42. The statements alleged in paragraphs 32-41 above were all materially false and misleading because they omitted to disclose that: (1) Luna's 1Q22 Report contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants attributing Luna's quarterly revenue growth to the Lios acquisition and the Company's positive financial results to organic factors such as its strategic decisions and sales execution, were materially false and misleading and/or lacked a reasonable basis at all times in that they failed to disclose that these positive results were only reached through improper revenue recognition.

**2. August 11, 2022: 2Q 2022 Financial Results**

43. On August 11, 2022, Luna issued a press release filed with the SEC on form 8-K, which announced its financial results for the second quarter of fiscal year 2022. The press release stated, in relevant part:

- Total revenues of $26.2 million for the three months ended June 30, 2022, up 19% compared to the three months ended June 30, 2021
- Gross margin of 61% for the three months ended June 30, 2022, compared to 57% for the three months ended June 30, 2021
- Net loss of $2.4 million for the three months ended June 30, 2022, compared to net loss of $0.2 million for the three months ended June 30, 2021; primarily due to $1.8 million benefit from tax and discontinued operations in the second quarter 2021.

44. The press release stated that the 19% comparable same quarter last year revenue growth was "primarily due to revenue generated by the Lios acquisition." It also stated that the increase in gross margin was "driven primarily by favorable product mix."

45. In the press release, Defendant Scott Graeff attributed the Company's financial results to organic factors, including Luna's management team's "focus and execution:"

> As I reflect on the first half of 2022, I'm pleased with the team's top-line performance and ability to navigate ongoing macroeconomic and market factors. [] We achieved double-digit revenue growth for the second-quarter in nearly all of our product lines, and I'm proud of the Luna team for their accomplishments. The team's focus and execution will carry us through the remainder of 2022 and will allow us to achieve growth in each business. This, combined with strong bookings, gives me the confidence to reaffirm our 2022 outlook.

46. In an earnings call that same day hosted by Defendants Graeff and Nestro, Defendant Graeff stated "for the second quarter 2022, the revenue growth, I just mentioned was driven by a full quarter of LIOS contribution and solid commercial sales in the legacy sensing and comms test business. In fact, our bookings growth once again exceeded our revenue growth in Q2 2022."

47. Defendant Graeff elaborated, "Let's dig a little deeper in the sensing, which you may recall is where we use the fiber as the physical sensor to create smart materials and structures. Revenues grew double-digit versus Q2 last year, driven both by a full quarter of LIOS as well as strong demand for legacy Luna products. In fact, Luna Legacy ODiSI, Hyperion and terahertz pipelines each contributed double-digit sales growth."

48. On August 12, 2022, Luna filed its financial statements on Form 10-Q for the quarter ended June 30, 2022 (the "2Q22 Report"). The Company reported revenues of about $26.12 million and a net loss of about $2.35 million for the quarter.

49. The 2Q22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 39 above.

50. Similarly, the 2Q22 Report further separately assured investors that "as of June 30, 2022, [Luna's] disclosure controls and procedures were effective."

51. The statements alleged in paragraphs 43-50 above were all materially false and misleading because they omitted to disclose that: (1) Luna's 2Q22 Report contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial statements results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

**3. November 10 2022: 3Q 2022 Results**

52. On November 10, 2022, Luna issued a press release filed with the SEC on Form 8-K, which announced its financial results for the third quarter ending on September 30, 2022. The press release stated in part:

- Total revenues of $29.2 million, up 43% year-over-year.
- Total revenues in constant currency of $30.1 million; up 48% year-over-year
- Gross margin of 58%, compared to 62% for the prior-year period.
- Net income of $1.2 million, compared to net income of $0.4 million for the prior-year period.

53. In the press release, Defendant Graeff again attributed the Company's positive 3Q 2022 financial results to the "strategic moves and investments" that Luna had made over the past two years:

> I'm extremely pleased with our performance in Q3, achieving over 40% growth in revenues and more than doubling Adjusted EBITDA versus last year. [] The team was able to achieve these strong financial results while still navigating a challenging supply chain and economic environment. And I'm particularly pleased that this quarter is more normative, positively reflecting the meaningful strategic moves and investments we've made over the past two years to refine Luna's focus and realign our organization appropriately. Today, Luna Innovations is uniquely positioned to offer a breadth of solutions and capabilities in fiber technology.

54. Defendant Graeff further stated that "[w]ith three quarters now behind us, we feel very comfortable that we will finish 2022 within the ranges that we provided on our March earnings call."

55. On November 10, 2022, Luna filed its financial statements on Form 10-Q for the quarter ended September 30, 2022 (the "3Q22 Report"). The Company reported revenues of about $29.15 million and net income of about $1.19 million for the quarter.

56. The 3Q22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 39 above.

57. Similarly, the 3Q22 Report separately assured investors that "as of September 30, 2022, [Luna's] disclosure controls and procedures were effective."

58. The statements alleged in paragraphs 52-57 above were all materially false and misleading because they omitted to disclose that: (1) Luna's 3Q22 Report contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and

procedures were not effective; and (5) as a result, Defendants' statements about its strategic decisions, investments, and organizational realignment were materially false and misleading and/or lacked a reasonable basis at all times.

**4. March 16, 2023: 4Q 2022 and Full Year 2022 Financial Results**

59. On March 14, 2023, Luna issued a press release filed with the SEC on Form 8-K, which announced its financial results for the year ending December 31, 2022. The press release stated as follows:

**Q4 Financial Highlights**

- Revenues of $31.7 million, up 31% year over year
  - Revenues in constant currency of $32.5 million; up 34% year over year
- Gross margin of 61%, compared to 58% for the prior year.
- Net income of $0.9 million, compared to net income of $1.6 million for the prior year.

. . .

**Full-Year Financial Highlights**

- Revenues of $109.5 million, up 25% year over year
  - Revenues in constant currency of $111.9 million; up 28% year over year
- Gross margin of 61%, compared to 59% for the prior year.
- Net income of $9.3 million, compared to net income of $1.4 million for the prior year.

60. In the press release, Defendant Graeff attributed Luna's positive 2022 financial performance to execution on the Company's five-year plan: "2022 was a transformational year for Luna representing the culmination of execution on the five-year strategic plan we outlined in 2017, thereby creating a pure-play fiber optics company."

61. In a March 14, 2023 earnings call hosted by Defendants Graeff and Nestro, Defendant Graeff, after citing Luna's revenue growth, stated "I'm pleased that the growth was driven not only by last year's acquisition, but also by very strong growth in our legacy business . . . . You can see that the strategic changes we made resulted in a stronger flow through of our top line growth of profit."

62. Defendant Graeff further credited Luna's "execution" when he stated "[t]hrough last year, you've heard me say that investment was critical to both our top and bottom line growth. Our financials are proving that case. We're delivering top line growth and our gross margin and adjusted EBITDA demonstrate that we are creating pull through leverage to the bottom line. We have continued strong execution against our strategy and have enjoyed consecutive quarters of positive leverage."

63. In the earnings call, Defendant Nestro stated the revenue increase "was driven largely by the Lios acquisition in strength and communications test products." He further elaborated that "[t]he increase in revenues year-on-year was driven largely by the Lios acquisition, increasing adoption of our Terahertz technology, and strengthen in communications test products."

64. On March 16, 2023, Luna filed its financial statements on Form 10-K for the year ended December 31, 2022 (the "FY22 Report"). The Company reported revenues of about $109.49 million and net income of about $9.28 million for the year.

65. The FY22 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 39 above.

66. Similarly, the FY22 Report separately assured investors that that "as of December 31, 2022, [Luna's] disclosure controls and procedures were effective."

67. The 2022 10-K further stated the following with respect to the Company's financial reporting processes:

> Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our internal control over financial reporting is designed, under the supervision of our principal executive and principal financial officers, and effected by our board of directors, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with accounting principles generally accepted in the United States of America ("GAAP").
>
> Based on our evaluation[,] . . . our President and Chief Executive officer, and our Chief Financial Officer concluded that our internal control over financial reporting was effective as of December 31, 2022 to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.

68. The statements alleged in paragraphs 59-67 above were all materially false and misleading because they omitted to disclose that: (1) Luna's FY22 10-K Report contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about its plan execution, legacy business, and investment decisions were materially false and misleading and/or lacked a reasonable basis at all times.

**5. April 20, 2023: Luna's 2023 Proxy Statement**

69. On April 20, 2023, Luna filed a proxy statement on Form DEF 14A with the SEC (the "2023 Proxy"), soliciting shareholder approval for, *inter alia*, the compensation of certain of the Company's executive officers including Defendants Graeff and Nestro.

70. The 2023 Proxy Statement contained false and misleading statements regarding the Company's financial results. Specifically, the 2023 Proxy repeated the same misstatements regarding the Company's 2022 revenue and net income that were contained in the 2022 10-K. Further, the 2023 Proxy repeated the same statement regarding the adequacy of the Company's internal controls that was contained in the 2022 10-K:

> Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act. Our internal control over financial reporting is designed, under the supervision of our principal executive and principal financial officers, and effected by our board of directors, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with accounting principles generally accepted in the United States of America ("GAAP").
>
> Based on our evaluation[,] . . . our President and Chief Executive officer, and our Chief Financial Officer concluded that our internal control over financial reporting was effective as of December 31, 2022 to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.

71. The statements alleged in paragraphs 69-70 above were all materially false and misleading because they omitted to disclose that (1) Luna's 2022 financial results contained unearned revenues that should not have been recognized under GAAP; (2) Luna would need to restate these financial results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; and (4) Luna's disclosure controls and procedures were not effective.

**6. May 9, 2023: 1Q 2023 Financial Results**

72. On May 9, 2023, Luna issued a press release filed with the SEC on Form 8-K, which announced its financial results for the first quarter of FY2023. The press release stated, in relevant part,

**Q1 Highlights**

- Total revenues of $25.0 million, up 11% year over year
- Total revenues in constant currency of $25.3 million; up 13% year-over-year
- Gross margin of 60%, compared to 64% for the prior year.
- Net loss of $1.8 million, compared to net income of $9.6 million for the prior year, which included the gain on sale of Luna Labs

73. In the press release, Defendant Graeff claimed Luna's strong revenue growth was driven by "the foundational work [Luna] did in 2022:"

> I'm pleased that we were able to drive strong revenues in the first quarter, which is cyclically one of our softest revenue quarters. [] Because of the foundational work we did in 2022, we've entered 2023 with an integrated organizational structure, proven systems, and best practices. ***With those pieces in place, we were able to achieve the top end of revenue guidance for the quarter***.

74. On May 9, 2023, Luna filed its financial statements on Form 10-Q for the quarter ended March 31, 2023 (the "1Q23 Report"). The Company reported revenues of about $25.04 million and a net loss of about $1.84 million for the quarter.

75. The 1Q23 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 39 above.

76. Similarly, the 1Q23 Report separately assured investors that "as of March 31, 2023, [Luna's] disclosure controls and procedures were effective."

77. The statements alleged in paragraphs 72-76 above were all materially false and misleading because they omitted to disclose that: (1) Luna's 1Q23 Report

contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about its integrated organizational structure, proven systems, and best practices, were materially false and misleading and/or lacked a reasonable basis at all times.

**7. August 10, 2023: 2Q 2023 Financial Results**

78. On August 10, 2023, Luna issued a press releases filed with the SEC on Form 8-K, which announced its financial results for the second quarter of FY2023 (ending June 30, 2023). The press release stated, in pertinent part:

**Q2 Highlights**

- Total revenues of $29.2 million, up 11% year over year
- Gross margin of 58%, compared to 61% for the prior year.
- Net loss of $1.6 million, compared to net loss of $2.4 million for the prior year.

79. The press release stated, "Gross profit of $31.8 million for the six months ended June 30, 2023 increased from $30.2 million for the six months ended June 30, 2022 primarily due to higher sales."

80. On an August 10, 2023 earnings call hosted by Defendants Graeff and Nestro, Defendant Nestro stated that "revenue this quarter was $29.2 million, an increase of 11% year-over-year. The increase was driven largely by performance in the Sensing business, specifically organic growth from OptaSense and LIOS."

81. On August 10, 2023, Luna filed its financial statements on Form 10-Q for the quarter ended June 30, 2023 (the "2Q23 Report"). The Company reported

revenues of about $29.16 million and a net loss of about $1.59 million for the quarter.

82. The 2Q23 Report attached Sarbanes-Oxley certifications by Defendants Graef and Nestro assuring investors of the same matters as alleged in paragraph 39 above.

83. Similarly, the 2Q23 Report separately assured investors that "as of June 30, 2023, [Luna's] disclosure controls and procedures were effective."

84. The statements alleged in paragraphs 78-83 above were all materially false and misleading because they omitted to disclose that: (1) Luna's 2Q23 Report contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial results; (3) Luna's disclosure controls and procedures did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about its organic growth and higher sales were materially false and misleading and/or lacked a reasonable basis at all times.

**8. November 14, 2023: 3Q 2022 Financial Results**

85. On November 14, 2023, Luna issued a press release filed with the SEC on Form 8-K, which announced its financial results for the third quarter ending September 30, 2023. The press release stated, in relevant part:

> **Q3 Highlights**
>
> - Total revenue of $30.7 million, up 5% year over year
> - Gross margin of 57%, compared to 58% for the prior year.
> - Net income of $0.5 million, compared to net income of $1.2 million for the prior year.

86. In the press release, Defendant Graeff stated “We delivered solid performance this quarter in spite of continued macroeconomic headwinds. [] We realized multiple significant wins in our Sensing business, providing further proof of the breadth of applications and abundance of opportunities for our fiber sensing solutions. We also recognized a particularly strong showing from our Communications Test business, where we saw significant increase in revenue after realizing moderate recovery from the headwinds this business faced last quarter.”

87. In a November 14, 2023 earnings call hosted by Defendants Graeff and Gomez-Quintero, Defendant Gomez-Quintero stated “Now, let me provide some additional detail on our Q3 results. Third quarter revenue was $30.7 million, an increase of 5% year-over-year. The increase was driven largely by strong performance from our Comms Test business, specifically a rebound in sales to our government and defense customers as that business continues to recover from the headwinds we mentioned last quarter.”

88. On November 14, 2023, Luna filed its financial statements on Form 10-Q for the quarter ended September 30, 2023 (the “3Q23 Report”). The Company reported revenues of about $30.7 million and net income of about $461 thousand for the quarter.

89. The 3Q23 Report attached Sarbanes-Oxley certifications by Defendants Graef and Gomez-Quintero assuring investors of the same matters as alleged in paragraph 39 above.

90. Similarly, the 3Q23 separately assured investors that “as of September 30, 2023, [Luna’s] disclosure controls and procedures were effective.”

91. The statements alleged in paragraphs 85-90 above were all materially false and misleading because they omitted to disclose that: (1) Luna’s 3Q23 Report contained unearned revenues that should not have been recognized; (2) Luna would need to restate these financial results; (3) Luna’s disclosure controls and procedures

did not provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; (4) Luna's disclosure controls and procedures were not effective; and (5) as a result, Defendants' statements about "the breadth of applications and abundance of opportunities" for its business, as well as "the significant increase in revenue," were materially false and misleading and/or lacked a reasonable basis at all times.

## V. THE TRUTH BEGINS TO EMERGE

92. On March 12, 2024, after the market closed, Luna Innovations filed with the SEC a current report on Form 8-K announcing it would need to restate its financial statements for the second and third quarters of 2023 (the "First Restatement Announcement") because the Company improperly recognized revenues during these periods.

93. The First Restatement Announcement stated the following:

> A Special Committee of the Board of Directors (the "Board") of Luna Innovations Incorporated (the "Company") is conducting an independent review, with the assistance of external legal and financial advisors, ***of certain transactions for which revenue was recognized in the second and third quarters of 2023 that did not qualify for revenue recognition under U.S. generally accepted accounting principles***. The Special Committee is examining the circumstances surrounding these issues and is evaluating, among other things, the Company's disclosure controls and internal control over financial reporting and whether changes in accounting policies or other policies are necessary.
>
> While the independent review is ongoing, on March 12, 2024, the Audit Committee (the "Audit Committee") of the Board, ***based on preliminary findings of the review, and after consultation with, the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued unaudited interim condensed consolidated financial statements for the quarters ended June 30, 2023, and September 30, 2023***, as previously filed with the Securities and Exchange Commission (the "SEC"), ***should no longer be relied upon and should be restated***.
>
> ***In connection with the independent review, the Company has identified material weaknesses in its internal control over financial***

> ***reporting that existed as of June 30, 2023, and September 30, 2023, and has re-evaluated the effectiveness of the Company's disclosure controls and procedures as of those dates***. Based on this assessment, the Company's disclosure controls and procedures were ineffective for the quarters ended June 30, 2023, and September 30, 2023. The Company is continuing to evaluate its internal control over financial reporting and will report its remediation plan and further information regarding the material weaknesses when it reports its restated results for the affected periods.
>
> As the independent review remains ongoing, the Company has not yet determined the full extent of the impact on the second and third quarters of 2023 and whether and to what extent there may be an impact on financial statements for any other periods.
>
> The Company's management and the Audit Committee have discussed the matters disclosed in this current report on Form 8-K with Ernst & Young LLP, the Company's independent registered public accounting firm.

(Emphasis added).

94. Also on March 12, 2024, after the market closed, the Company filed with the SEC a late filing notice on Form NT 10-K (the "Late Filing Notice"). The Late Filing Notice stated the following:

> Luna Innovations Incorporated (the "Company") is filing this Notification of Late Filing on Form 12b-25 with respect to its Annual Report on Form 10-K for the fiscal year ended December 31, 2023 (the "Form 10-K"). ***The Company is unable to file the Form 10-K within the prescribed time period without unreasonable effort or expense***.
>
> As announced on March 12, 2024, a Special Committee of the Company's Board of Directors (the "Special Committee") is conducting an independent review, with the assistance of external legal and financial advisors, ***of certain transactions for which revenue was recognized in the second and third quarters of 2023 that did not qualify for revenue recognition under U.S. generally accepted accounting principles***. The Special Committee is examining the circumstances surrounding these issues and is evaluating, among other things, the Company's disclosure controls and internal control over financial reporting and whether changes in accounting policies or other policies are necessary. The Company currently anticipates reporting material weaknesses in internal controls related to evaluating customer arrangements for proper revenue recognition and other controls and will be working to remediate these issues.

> Additional time is needed to complete tasks and steps necessary to prepare and finalize the Company's annual financial statements and other disclosures required to be included in the Form 10-K, as well as to complete the ongoing review of recognition of revenue. There can be no assurance as to how long the review will take or when the Company will be able to complete the preparation and filing of the Form 10-K. However, the Company currently does not expect to file the Form 10-K within the extension period of fifteen calendar days provided under Rule 12b-25 under the Securities Exchange Act of 1934, as amended. In addition, the review is ongoing and the Company has not yet determined the full extent of the impact on the second and third quarters of 2023 and whether and to what extent there may be an impact on financial statements for any other periods.

(Emphasis added).

95. Defendants attempted to plead ignorance to the press about the admitted accounting errors. One article reported that Defendant Graeff stated he was "unaware of how the revenue recognition discrepancy happened. 'If we knew how it happened or when it happened – this is being brought to light now and we're addressing it as we found out,' he said."[4]

96. On this news, the price of Luna Innovations stock fell $2.24 per share, or 35.78%, from a close price of $6.26 per share on March 12, 2024 to close at $4.02 on March 13, 2024.

97. Then, on March 25, 2024, after the market closed, the Company filed with the SEC a current report on Form 8-K (the "March 25 Form 8-K") which announced that Defendant Graeff had retired, effective immediately. As the market suspected and as would later be revealed, Defendant Graeff "retired" because of the misconduct detailed in this complaint. The March 25 Form 8-K stated the following:

---

[4] *Roanoke-Based Luna Innovations, Questioning Some of its own Transactions, Delays Financial Reports*, Cardinal News (Mar. 13, 2024), *available at* https://cardinalnews.org/2024/03/13/roanoke-based-luna-innovations-questioning-some-of-its-own-transactions-delays-financial-reports/.

*Retirement of Scott Graeff as President and Chief Executive Officer and as a Board Member*

On March 24, 2024, **Scott Graeff retired as the President and Chief Executive Officer of the Company and as a member of the Board, effective immediately**. After consideration of various alternatives, including termination with or without cause, **the Board exercised its discretion in determining that it was in the best interests of the Company and its stockholders to accept Mr. Graeff's retirement and provide benefits to Mr. Graeff in exchange for his continued assistance and compliance with other obligations as set forth in a separation agreement** (the "Separation Agreement"), which the Company and Mr. Graeff entered into on March 24, 2024 (the "Separation Date").

Subject to Mr. Graeff's release of claims and his compliance with the Separation Agreement and his continuing obligations to the Company under his employment agreement and Confidential Information, Inventions Assignment, Non-competition and Non-Solicitation Agreement, the Company has agreed to provide Mr. Graeff with the following severance benefits: (a) severance payments in the form of continuation of his base salary for a period of nine months following the Separation Date, payable in accordance with the Company's normal payroll practices, (b) payment of his COBRA premium, if applicable, for up to nine months, and (c) accelerated vesting of 10,000 shares underlying Mr. Graeff's unvested RSUs. The remainder of Mr. Graeff's unvested equity awards were forfeited as of the Separation Date.

The Separation Agreement also contains certain covenants that are binding upon Mr. Graeff, **including a covenant to cooperate with the Company in connection with any investigation of any claims or demands asserted against it and with respect to matters arising from events that occurred during his period of employment with the Company**. Mr. Graeff also agreed to refrain from taking certain actions regarding the Company and its management and stockholders in light of Mr. Graeff's status as a holder of the Company's common stock. The Separation Agreement also contains a release of claims in favor of the Company, subject to customary exceptions, and mutual covenants not to disparage, subject to certain exceptions. In addition, the Separation Agreement contains clawback provisions pursuant to which, in addition to any required clawback under applicable law or listing requirements and the Company's clawback policies, 100% of all cash severance payments and accelerated RSUs provided to Mr. Graeff under the Separation Agreement are subject to clawback upon (a) the Board's determination, in its reasonable good faith discretion, that Mr. Graeff engaged in conduct that constituted "Cause" under his employment

> agreement, (b) the Board's determination, in its reasonable good faith discretion, that Mr. Graeff materially breached his continued obligations to the Company, or (c) a finding by a court that Mr. Graeff engaged in bad faith conduct.

(Emphasis added).

98. On this news, the price of Luna Innovations stock fell by $0.41 per share, or 11.54%, from a close price of $3.55 per share on March 25, 2024 to close at $3.14 on March 26, 2024.

99. On April 8, 2024, Luna announced that Nasdaq, on April 2, 2024, sent a written notice of deficiency regarding Luna's failure to file an annual report on Form 10-K with the SEC, and that as a result, Luna is no longer in compliance with Nasdaq's rule requiring companies to file reports in a timely manner to the SEC, according to the letter from Nasdaq's Listing Qualifications Department. The Company explained that it will remain listed for at least 60 days from April 2, 2024. In that time, Luna must submit a plan to Nasdaq to regain compliance with its listing rule. If Nasdaq accepts that plan, then Luna will have up to 180 days, ending September 30, 2024 to file its annual report and regain compliance.

100. On April 19, 2024, Luna filed its Form 8-K which announced that, in addition to non-reliance on its 2Q23 and 3Q23 Reports, investors should no longer rely on its previously filed financial statements contained in its 1Q22, 2Q22, 3Q22, FY22, and 1Q23 Reports (the "Second Restatement Announcement") because the Company improperly recognized revenues in each of these Reports too.

101. The Second Restatement Announcement stated the following:

> As previously reported in the Current Report on Form 8-K (the "Initial 8-K") filed by Luna Innovations Incorporated (the "Company") with the Securities and Exchange Commission (the "SEC") on March 12, 2024, a Special Committee (the "Special Committee") of the Board of Directors (the "Board") of the Company has been conducting an independent review, with the assistance of external legal and financial advisors, of certain revenue recognition matters in connection with the Company's previously issued financial statements. As disclosed in the

Initial 8-K, the Audit Committee (the "Audit Committee") of the Board, based on preliminary findings of the review, and after consultation with the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued interim unaudited condensed consolidated financial statements for the quarters ended June 30, 2023 and September 30, 2023 (the "Q2 and Q3 2023 Financial Statements"), as previously filed with the SEC, ***should no longer be relied upon and should be restated due to the recognition of revenue with respect to certain transactions in those periods that did not qualify for revenue recognition under U.S. generally accepted accounting principles***.

While the independent review is continuing, on April 15, 2024, the Audit Committee, based on additional preliminary findings of the review, and after consultation with the Company's management and the Special Committee's external legal and financial advisors, concluded that the Company's previously issued audited consolidated financial statements as of and for the year ended December 31, 2022 (the "2022 Annual Financial Statements"), as well as the Company's previously issued interim unaudited condensed consolidated financial statements as of and for each of the three months ended March 31, 2022, the three and six months ended June 30, 2022 and the three and nine months ended September 30, 2022 (collectively, the "2022 Interim Financial Statements" and, together with the 2022 Annual Financial Statements, the "2022 Financial Statements") as well as the interim unaudited condensed consolidated financial statements as of and for the three months ended March 31, 2023 (together with the Q2 and Q3 2023 Financial Statements and the 2022 Financial Statements, the "Affected Financial Statements"), should no longer be relied upon and should be restated due to identified accounting errors in each of the Affected Financial Statements relating to revenue recognition. Similarly, ***any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements should no longer be relied upon. In addition, the report of Ernst & Young LLP included in the previously issued 2022 Annual Financial Statements should no longer be relied upon***.

In addition, the Company is assessing the effect of the matters identified to date on the Company's internal control over financial reporting and its disclosure controls and procedures. In connection with the review and the identification of the accounting errors described in this report, ***the Audit Committee identified material weaknesses in the Company's internal control over financial reporting that existed during the periods covered by each of the Affected Financial Statements***, and has re-evaluated the effectiveness of the Company's disclosure controls and

> procedures as of each quarter end included in the Affected Financial Statements (the "Affected Balance Sheet Dates"). Based on this assessment, the Audit Committee has determined that the Company's disclosure controls and procedures were ineffective as of each of the Affected Balance Sheet Dates. The Audit Committee has also concluded that, based on its determination that the Company's internal control over financial reporting was not effective as of December 31, 2022, Management's Report on Internal Control over Financial Reporting included in the Company's Annual Report on Form 10-K for the year ended December 31, 2022 should no longer be relied upon.
>
> The description of the restatements and accounting errors in this report is preliminary, unaudited and subject to further change in connection with the ongoing review and the completion of the restatements of the Affected Financial Statements. Additionally, as the independent review remains ongoing, the Company has not yet determined the full extent of the impact on the Affected Financial Statements and whether and to what extent there may be an impact on financial statements for any other periods. Accordingly, there can be no assurance as to the actual effects of the restatements or that the Company will not determine to restate any financial statements in addition to the Affected Financial Statements or with respect to any additional accounting errors.
>
> Although the Company cannot at this time estimate when it will file its restated financial statements, the Company is diligently pursuing completion of the restatements and intends to make such filings as soon as reasonably practicable following the completion of the review and the restatements.
>
> The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, Ernst & Young LLP.

102. As the market absorbed this information, this news drove the price of Luna shares down $0.78 (28.1%) over the next four trading days, from a close price of $2.77 per share on April 19, 2024 to a close price of $1.99 on April 25, 2024.

103. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## VI. POST-CLASS PERIOD REVELATIONS CONFIRMING DEFENDANTS' FRAUD

104. Several events occurring after the Class Period further support the conclusion that the alleged accounting errors was a product of Defendants' intentional wrongdoing.

105. On May 1, 2024, Luna announced that on April 26, 2024 its Board of Directors "approved the termination of the employment of Brian Soller, the Chief Technology Officer and Executive Vice President of Corporate Development of the Company, for cause, effective as of May 1, 2024."

106. In addition, Luna revealed that "[o]n April 29, 2024, George Gomez-Quintero, the Chief Financial Officer of the Company, notified the Company of his resignation, effective May 1, 2024[]" and "[i]n connection with his resignation, Mr. Gomez-Quintero is not entitled to receive any severance or other benefits upon his separation from the Company."

107. With respect to former CEO Scott Graeff, Luna also disclosed that his conduct triggered certain claw back provisions in his separation agreement:

> As previously disclosed, the Company entered into an Agreement with Scott Graeff, the Company's former President and Chief Executive Officer, on March 24, 2024 (the "Graeff Separation Agreement"). Pursuant to the Graeff Separation Agreement, all cash severance payments under the Graeff Separation Agreement and all shares underlying the restricted stock units that were accelerated pursuant to the Graeff Separation Agreement were subject to recoupment or immediate forfeiture by the Company upon a written determination in the reasonable, good faith discretion of the Board that Mr. Graeff engaged in conduct that constituted "Cause" under Mr. Graeff's employment agreement. On April 26, 2024, the Board determined that Mr. Graeff engaged in conduct that constituted Cause and the Company will cancel all future severance payments and Mr. Graeff will forfeit all shares underlying the accelerated vesting of the 10,000 restricted stock units under the Graeff Separation Agreement.

108. In addition, Luna said "[o]n May 1, 2024, in connection with the previously announced independent review of the Company's historical financial

statements being undertaken by a special committee of the Board, in addition to the other personnel actions described in this report, the Company terminated the employment of seven additional employees, effective immediately."

109. Lastly, Luna disclosed that its Board "will consider a wide range of options for the Company including, among other things, a potential sale, merger or other strategic transaction."

110. On July 12, 2024, Luna announced Richard Roedel, the then-Interim President and Interim Executive Chairman of the Company, was stepping down from both positions "due to health reasons, effectively immediately."[5]

111. On July 23, 2024, Luna announced the retirement of Richard Roedel from the Board of Directors, and the closing of a $15 million junior secured term loan facility.

## VII. DEFENDANTS' CONTINUING FRAUD ON INVESTORS BY FAILING TO RESTATE AND REPORT ITS ONGOING FINANCIAL RESULTS

112. As detailed below, Luna's management continues to conceal material information from its investors by refusing to file its restated financials for the impacted period, declining to release the findings and conclusions of its internal investigation, and reporting its ongoing financial results.

113. For example, on May 13, 2024, the Company filed a notification that it would not be timely filing its Quarterly Report for the first quarter of 2024 for the period ended March 31, 2024 due to its ongoing investigations into revenue recognition errors in its financial statements. While the Company stated it was working diligently to complete the restatements and file its financial reports as soon

---

[5] *See* https://finance.yahoo.com/news/luna-announces-appointment-kevin-ilcisin-213600917.html.

as possible, it claimed that due to the complexity of the restatements, there is no guarantee when the process will be completed.

114. On May 21, 2024, Luna Innovations announced that it had received a notice from Nasdaq stating that it is out of compliance with listing rules due to late filing of its Form 10-Q for the quarter ended March 31, 2024 and because the Company remained delinquent in filing its Form 10-K for the year ended December 31, 2023. Luna explained that if it does not regain compliance within the specified timeframe, its shares may be delisted from Nasdaq. Luna stated that it had until June 3, 2024, to submit a plan to Nasdaq to regain compliance and that it was currently working on completing its filings.

115. On June 13, 2024, Luna announced that it had been granted an extension until September 11, 2024, to file its Form 10-K and Form 10-Q with the SEC. Luna explained if the company fails to meet this deadline, it may be delisted from Nasdaq.

116. On August 12, 2024, Luna filed a notification that it would not be timely filing its Quarterly Report for the second quarter of 2024 for the period ended June 30, 2024 due to ongoing investigations into revenue recognition errors in its financial statements. The Company stated it was working diligently to complete the restatements and file its financial reports as soon as possible. However, due to the complexity of the restatements, there is no guarantee when the process will be completed.

117. On August 26, 2024, Luna announced that on August 20, 2024 the Company received another delinquency notification letter from Nasdaq's Listing Qualifications Department notifying the Company that because the Company has not yet filed its Form 10-Q for the quarter ended June 30, 2024 (the "Q2 2024 Form 10-Q") and because the Company remains delinquent in filing its Form 10-Q for the quarter ended March 31, 2024 (the "Q1 2024 Form 10-Q") and its Form 10-K

for the year ended December 31, 2023 (the ”2023 Form 10-K”), the Company is not in compliance with Nasdaq Listing Rule 5250(c)(1), which requires listed companies to timely file all periodic financial reports with the Securities and Exchange Commission (the “SEC”). Luna stated that it previously submitted a plan to Nasdaq to regain compliance with listing rules in connection with the earlier notice of non-compliance. In response, Nasdaq granted the Company an extension until September 11, 2024 to regain compliance. However, because of the additional delinquency, the Company disclosed that it now must submit an update to its original plan to regain compliance. Luna explained that the most recent Notice provided that the Company has until September 4, 2024 to submit to Nasdaq the updated plan to regain compliance with the Rule. If Nasdaq accepts the plan, Nasdaq may grant the Company an exception of up to 180 calendar days from the due date of the 2023 Form 10-K, or until September 30, 2024, to regain compliance. Luna said that the company is working diligently to complete the restatements and file its financial reports as soon as possible. However, due to the complexity of the restatements, there is no guarantee when the process will be completed.

118. The September 2024 compliance deadlines came and went with Luna failing to file the necessary financial reports.

119. On October 7, 2024, Luna issued another press release and filed a Form 8-K. The press release stated that, on October 1, 2024, Nasdaq informed Luna that it was not compliant with Nasdaq’s listing rules based on its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2023, its Quarterly Report on Form 10-Q for the quarter ended March 31, 2024 or its Quarterly Report on Form 10-Q for the quarter ended June 30, 2024. Based on materials submitted to Nasdaq by Luna on April 2, 2024, May 17, 2024 and August 20, 2024, Nasdaq granted the Company an exception until September 30, 2024, to

regain compliance with the Listing Rule, which Luna did not meet. Nasdaq warned Luna that, unless it appealed its decision by October 8, 2024, it will be delisted. It is unclear why Luna delayed the announcement of the delisting notice by six days. Moreover, Luna wrote that it planned to appeal the determination to a Nasdaq panel "on or prior to" October 10, 2024, which is two days after the deadline. Luna explained that the appeal hearing request, should it arrive on time, would stay Nasdaq's action for 15 days, but that Luna plans to request a longer stay that could stretch to 45 days.

## VIII. PLAINTIFF'S CLASS ACTION ALLEGATIONS

120. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

121. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

122. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

123. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

124. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

125. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

126. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;
- as a public issuer, the Company filed periodic public reports;
- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and
- the Company was followed by a number of securities analysts employed by major brokerage firms who drafted reports that were widely distributed and publicly available.

127. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

128. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens*

*of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 (b) Promulgated Thereunder Against All Defendants

129. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

130. This cause of action is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 (b) promulgated thereunder, 17 C.F.R. § 240.10b-5. This claim is asserted on behalf of all members of the Class against Defendants.

131. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

132. Defendants violated §10(b) of the 1934 Act and Rule 10b-5(b) in that they made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

133. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or

documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

134. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

135. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

136. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

137. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

138. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 (b) promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

## For Violations of Section 10(b) And Rule 10b-5 (a) and (c) Promulgated Thereunder
## Against All Defendants

139. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

140. This cause of action is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) and (c) promulgated thereunder, 17 C.F.R. § 240.10b-5. Accordingly, Plaintiff need not allege in this Count, nor prove in this case, that each of the Defendants made any misrepresentations or omissions of material fact for which they may also be liable under Rule 10b-5(b) and/or any other provisions of law. This claim is asserted on behalf of all members of the Class against Defendants.

141. During the Class Period, Defendants engaged in deceptive and manipulative acts in a scheme to defraud investors. Defendants carried out a common plan, scheme, and unlawful course of conduct that was intended to, and did: (i) deceive the investing public, including Plaintiff and the Class; (ii) artificially inflate the market price of Luna securities; and (iii) cause Plaintiff and the Class to purchase Luna securities at artificially inflated prices.

142. In furtherance of this unlawful plan, scheme, and course of conduct, Defendants employed devices, schemes, and artifices to defraud, and knowingly and/or recklessly engaged in acts, transactions, practices, and courses of business, including the dissemination of false and misleading statements, that operated as a

fraud and deceit upon Plaintiff and the Class in connection with their purchases of Luna securities, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 (a) and (c) promulgated thereunder.

143. Defendants' fraudulent devices, schemes, artifices, and deceptive acts, practices, and course of business included engaging in an undisclosed and unsustainable revenue recognition scheme, whereby Luna was improperly recognizing revenue in violation of GAAP. Ultimately, this conduct resulted in the Company making false statements to the market about the true financial performance of Luna and the reasons for that performance.

144. Plaintiff and the Class reasonably relied upon the integrity of the market in which Luna securities traded.

145. During the Class Period, Plaintiff and the Class were unaware of Defendants' fraudulent scheme and unlawful course of conduct. Had Plaintiff and the Class known of Defendants' unlawful scheme and unlawful course of conduct, they would not have purchased Luna securities, or if they had, would not have done so at the artificially inflated prices paid for such securities.

146. As a direct and proximate result of Defendants' scheme to defraud and such unlawful course of conduct, Plaintiff and the Class suffered damages in connection with their purchases of Luna securities during the Class Period.

147. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder and are liable to Lead Plaintiffs and the Class for damages suffered in connection with their purchases of Luna securities during the Class Period.

## COUNT III

### Violations of Section 20(a) of the Exchange Act
### <u>Against the Individual Defendants</u>

148. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

149. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

150. As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

151. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

152. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Plaintiff as Class Representative, and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Class Counsel;

(b) awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## X. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 11, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Lucas E. Gilmore*

Lucas E. Gilmore, Bar No. 250893
Reed Kathrein, Bar No. 139304
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: lucasg@hbsslaw.com
reed@hbsslaw.com

*Counsel for Lead Plaintiff George Lang*