LISA R. BUGNI (SBN 323962)
  *lbugni@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355
Fax: (213) 443-4310

JESSICA CORLEY (*pro hac vice*)
  *jpcorley@kslaw.com*
KING & SPALDING LLP
1180 Peachtree St. NE
Atlanta, GA 30309
Tel: (404) 572 4600
Fax: (404) 572 5100

*Attorneys for Defendant Luna
Innovations Incorporated*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re LUNA INNOVATIONS INCORPORATED SECURITIES LITIGATION | Master File No. 2:24-cv-02630-CBM-KS |
| | CLASS ACTION |
| | **REPLY IN SUPPORT OF DEFENDANTS LUNA INNOVATIONS INCORPORATED'S AND SCOTT A. GRAEFF'S MOTION TO DISMISS AMENDED COMPLAINT** |
| This Document Relates To: ALL ACTIONS | |
| | JURY TRIAL DEMANDED |
| | Date:      March 11, 2025 |
| | Time:      10:00 a.m. |

0

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.   THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ......... 1

A.  The Restatement Announcements Do Not Support Scienter. .......................... 1
B.  Plaintiff's Scienter Allegations Rely on Improper Group Pleading. ............... 3
C.  The Employee Departures Do Not Support Scienter. ...................................... 4
D.  Luna's Nasdaq Communications Do Not Support Scienter. ............................ 5
E.  The Core Operations Doctrine Does Not Support Scienter. ............................ 6
F.  A Holistic Analysis Does Not Support Scienter. ............................................ 7

II.  THE AC FAILS TO PLEAD THE NON-FINANCIAL CHALLENGED
STATEMENTS ARE ACTIONABLE ............................................................... 7

A.  Plaintiff Engages in Improper Puzzle Pleading. ............................................ 7
B.  Plaintiff Does Not Adequately Plead Falsity of the
Non-Financial Statements. ............................................................................. 8
C.  The SOX/Internal Control Statements Are Non-Actionable. .......................... 8
D.  All Other Statements of Opinion and Puffery Are Non-Actionable. ............... 9
E.  The Forward-Looking Statements Are Protected by the Safe Harbor. ............ 9

III. THE AC FAILS TO PLEAD SCHEME LIABILITY ...................................... 10

IV. THE AC FAILS TO ALLEGE A CONTROL PERSON CLAIM ................... 10

CONCLUSION ........................................................................................................ 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adaptive Broadband Sec. Litig.*,
   2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ....................................................... 2

*Brown v. InnerWorkings, Inc.*,
   2019 WL 4187385 (C.D. Cal. Mar. 27, 2019) .................................................. 6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
   Tech, Inc.*,
   856 F.3d 605 (9th Cir. 2017) ............................................................................ 8

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
   2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .................................................. 6

*In re Comverse Tech., Inc. Sec. Litig.*,
   2007 WL 4207191 (E.D.N.Y. Oct. 31, 2007) ................................................. 10

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................................ 10

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ............................................................................ 1

*Ezzes v. Vintage Wine Estates, Inc.*,
   2024 WL 895018 (D. Nev. Mar. 1, 2024) ..................................................... 3, 7

*Garcia v. J2 Glob., Inc.*,
   2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) ................................................... 3

*In re Intuitive Surg. Sec. Litig.*,
   65 F. Supp. 3d 821 (N.D. Cal. 2014) ............................................................... 8

*Kaltman v. Key Energy Services, Inc.*,
   447 F. Supp. 2d 648 (W.D. Tex. 2006) ......................................................... 1, 5

*King v. Navy Fed. Credit Union*,
   699 F. Supp. 3d 864 (C.D. Cal. 2023) .............................................................. 4

*Medhekar v. U.S. Dist. Ct.*,
   99 F.3d 325 (9th Cir. 1996) .............................................................................. 1

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
 540 F.3d 1049 (9th Cir. 2008) .......................................................................... 6

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
 2016 WL 6782768 (C.D. Cal. Aug. 9, 2016) ................................................... 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
 759 F.3d 1051 (9th Cir. 2014) .......................................................................... 9

*Primo v. Pacific Biosciences of California, Inc.*,
 940 F. Supp. 2d 1105 (N.D. Cal. 2013) ........................................................... 10

*Reese v. Malone*,
 747 F.3d 557 (9th Cir. 2014) ............................................................................ 6

*S. Ferry LP, No. 2 v. Killinger*,
 542 F.3d 776 (9th Cir. 2008) ............................................................................ 7

*Shnayder v. Allbirds, Inc.*,
 2024 WL 2125598 (N.D. Cal. May 10, 2024) ................................................... 8

*Smith v. NetApp, Inc.*,
 2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ..................................................... 9

*Studen v. Funko, Inc.*,
 2024 WL 2209686 (W.D. Wash. May 16, 2024) ............................................... 6

*In re Watchguard Sec. Litig.*,
 2006 WL 8473541 (W.D. Wash. Apr. 21, 2006) ............................................... 2

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ................................................................. 1, 4, 5, 6

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u ...........................*passim*

**Other Authorities**

Rule 10b-5 .......................................................................................................... 10

- ii -

# INTRODUCTION

In enacting the PSLRA, "Congress clearly intended that complaints in [] securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants[.]" *Medhekar v. U.S. Dist. Ct.*, 99 F.3d 325, 328 (9th Cir. 1996). Plaintiff seeks to turn this rule on its head, arguing that Defendants have not yet provided the information he needs. But it is Plaintiff's burden to plead his claims adequately. Not the other way around. If any bad precedent is to be set here, it is a decision from this Court holding that a plaintiff can survive dismissal under the PSLRA (a) by relying solely on an announcement of a need to restate financials and (b) without bothering to plead which GAAP principles are at issue or whether Defendants were aware of and knowingly violated such principles. The Motion to Dismiss ("Motion") the AC[1] should be granted.

# ARGUMENT

**I.      THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER**

**A. The Restatement Announcements Do Not Support Scienter.**

Clear and controlling Ninth Circuit law provides that "the mere publication of a restatement is not enough to create a strong inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009); *see also DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("[S]cienter requires more than a misapplication of accounting principles"). In response, Plaintiff cites to a decision from a Texas district court for the purported proposition that it is. ECF 76 ("Opp.") at 24 (citing *Kaltman v. Key Energy Services, Inc.*, 447 F. Supp. 2d 648 (W.D. Tex. 2006)). But Ninth Circuit law controls. And, in any event, the complaint in *Kaltman* pled that the restatement involved the write down of nearly $165-195 million, representing over 20% of the company's fixed assets. 447 F. Supp. 2d at 664. Here, of course, no facts are pled as to the restatement other than the mere need to restate, so *Kaltman* does not apply.

---

[1] Capitalized terms used but not defined herein have the same meaning as in the Motion. ECF 70.

- 1 -

Plaintiff also cites *Adaptive*, but the detailed allegations in that case stand in stark contrast to the paltry ones here. Opp. at 24 (citing *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002)). Among other things, the complaint in *Adaptive* alleged: (1) "specific amounts by which revenue was overstated, dates of transactions and/or the identities of the customers or company employees involved"; and (2) "detailed evidence of the contemporaneous decision-making behind the accounting errors," including evidence of the "internal debate at [the company] as to whether to override internal policies and GAAP restrictions." *Id.* at \*13. Here, Plaintiff does not allege which GAAP principles are at issue, or that any Individual Defendant was even aware of them. He certainly does not allege facts, as the plaintiffs in *Adaptive* did, that the Individual Defendants discussed and consciously overrode the relevant GAAP principles with the specific goal of inflating Luna's financial results. Nor does the AC contain confidential witness allegations, as in *Adaptive*. If there are any lessons to learn from *Adaptive*, it is that the AC is woefully inadequate to withstand the Motion.

Beyond that, Plaintiff lodges inapt criticisms of the authority on which Defendants relied. Plaintiff first contends *Watchguard* was merely about "a mistake in calculating early pay incentive discounts." Opp. at 23 (citing *In re Watchguard Sec. Litig.*, 2006 WL 8473541 (W.D. Wash. Apr. 21, 2006). But the opinion also addressed revenue recognition, including the alleged understatement of rebate obligations and improper timing of revenue recognition for contingent product sales. *Id.* at \*7. Even though the allegations were supported by facts from an unnamed witness, none of which appear in the AC here, the court still held the allegations "do not show that any Defendant knew about those problems or was deliberately reckless in avoiding such knowledge before reporting quarterly earnings." *Id.* "To raise an inference of scienter, Plaintiffs would have to plead that a Defendant was culpably aware of or responsible for efforts to improperly record revenue from such sales." *Id.* The failure to so allege in *Watchguard* resulted in dismissal. *Id.* at \*11. The same

- 2 -

result should apply here.

Plaintiff also attempts to downplay the decision in *Ezzes v. Vintage Wine Estates, Inc.*, 2024 WL 895018 (D. Nev. Mar. 1, 2024). According to Plaintiff, *Ezzes* is distinguishable because the GAAP principle there involved subjective judgment. Opp. at 24. Plaintiff completely ignores that the *Ezzes* court was able to assess the relevant GAAP principle as involving subjective judgment only because the complaint alleged what that GAAP principle was. *Ezzes*, 2024 WL 895018, at *11. The AC here alleges no GAAP rules at all. More importantly, even when presented with specific allegations of GAAP violations, the *Ezzes* court still held dismissal was appropriate because, as is true with the AC, plaintiff did not "plead facts demonstrating that Defendants knew of [the accounting] principle or knew it was being incorrectly applied." *Id.* The AC should be dismissed.

## B. Plaintiff's Scienter Allegations Rely on Improper Group Pleading.

As explained in the Motion, Plaintiff improperly lumps Defendants together for purposes of alleging scienter. The AC devotes only two paragraphs to scienter, neither of which distinguishes the Individual Defendants. Plaintiff does not dispute that scienter must be determined by individual for purposes of the PSLRA. Nor could he. Instead, Plaintiff seeks to distinguish his facts from those in *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331 (C.D. Cal. Mar. 5, 2021), even though both cases involve verbatim scienter allegations. Specifically, Plaintiff insists that, unlike *Garcia*, his complaint includes "allegations against defendant Graeff [that] are robust and plentiful[.]" Opp. at 30. Not so. Although the AC refers to the challenged statements issued by Mr. Graeff, it does not include any particularized allegations suggesting that Mr. Graeff was aware of the relevant GAAP principles or knowingly misapplied them. The same is true with respect to the other Individual Defendants.[2] Plaintiff provides no explanation whatsoever as to any Individual Defendant's purported

---

[2] Tellingly, although Plaintiff argues that the AC includes additional scienter allegations, he refuses to identify them. *See* Opp. at 30.

- 3 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

knowledge or involvement in the alleged "fraud." In short, Plaintiff's pleading approach makes it impossible for this Court to evaluate scienter with respect to each Individual Defendant. The AC should be dismissed.

### C. The Employee Departures Do Not Support Scienter.

In response to Defendants' argument that the employee departures do not give rise to a strong inference of scienter, Plaintiff quarrels with the holding of *Zucco*. But the Ninth Circuit could not have been clearer: "Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself in order for a resignation to be strongly indicative of scienter." *Zucco*, 552 F.3d at 1002. The AC pleads zero facts to refute this inference.

Implicitly recognizing as much, Plaintiff resorts to relying on an unalleged and unfounded "fact"—that Mr. Graeff failed to cooperate in the Company's internal investigation. Opp. at 26. That fact is nowhere alleged in the AC and, thus, cannot support denial of the Motion. *See King v. Navy Fed. Credit Union*, 699 F. Supp. 3d 864, 870 (C.D. Cal. 2023) ("Plaintiff may not amend his allegations through facts raised in opposition to a motion to dismiss"). Plaintiff's purported support for the unalleged fact is the decision by Luna's Board to clawback Mr. Graeff's severance payment. But it is a leap too far to infer that the clawback was in response to a failure to cooperate in the investigation, even if that allegation had been included in the AC. Luna's clawback rights are many (ECF 70-6 at 30), and the AC fails to allege which one was triggered here. All that is actually alleged in the AC is Mr. Graeff's departure, which is insufficient to give rise to a strong inference of scienter. *Zucco*, 552 F.3d at 1002; *see also* Mot. at 12-13 (citing additional authority).

Plaintiff also mischaracterizes the events surrounding Mr. Gomez-Quintero's departure. Confusingly, Plaintiff describes Mr. Gomez-Quintero's exit from the Company as a "termination," "retire[ment]," and "resignation" in different places. *See* Opp. at 34, 25, 4. As the Company announced at the time, Mr. Gomez-Quintero

- 4 -

voluntarily resigned. AC ¶ 14. Plaintiff then, without factual basis, makes the baseless inferential leap that the departure must have been related to the investigation as Mr. Gomez-Quintero "was not entitled to severance pay." Opp. at 25. But there are a host of reasons why an executive may or may not be entitled to severance, especially after less than seven months of employment and amid periods of poor financial performance. *See Zucco*, 552 F.3d at 1002. Plaintiff's unsupported speculation about Mr. Gomez-Quintero's departure falls well short of the requisite strong inference of scienter. *See id.*

### D. Luna's Nasdaq Communications Do Not Support Scienter.

As Defendants established in the Motion, Luna's ongoing communications regarding the status of its investigation and consequences arising from its inability to timely complete the investigation do not give rise to a strong inference of scienter because the innocent inference that Luna is trying to come to a correct conclusion is more compelling. Mot. at 13-14. Citing *Kaltman*, Plaintiff contends the failure to issue restated financials is supportive of scienter. Opp. at 28. But, as discussed above, Ninth Circuit law controls, not *Kaltman*, and, in any event, the complaint in *Kaltman* had more detail alleged, including the impact of the restated financials and that they constituted over 20% of the value of the company's fixed assets. *Kaltman*, 447 F. Supp. 2d at 664. No such details are alleged here.

Moreover, it cannot be inferred from the bare announcement of the need to restate itself that the revenue recognition error had a significant impact on Luna's overall earned revenues. In fact, Luna's estimated 2024 revenues reflect an annual increase over prior reported periods, including FY 2022. *See* Luna Announces Updates on Operating Metrics and Intent to Deregister Stock, *available at* https://finance.yahoo.com/news/luna-announces-updates-operating-metrics-152400 148.html (last visited Feb. 4, 2025). Regardless, statements and events taking place <u>after</u> the alleged corrective disclosure are not germane to the scienter analysis, which evaluates Defendants' knowledge at the time the challenged statements were made.

- 5 -

*See Brown v. InnerWorkings, Inc.*, 2019 WL 4187385, at \*4 (C.D. Cal. Mar. 27, 2019) (events from outside the class period are "not relevant to determining whether Defendants acted with scienter").

### E. The Core Operations Doctrine Does Not Support Scienter.

Plaintiff also argues that scienter has been sufficiently pled because: (1) Defendants held themselves out as "knowledgeable" of Luna's revenue recognition practices; (2) Defendants had "access" to the disputed information; and (3) the prominence of the accounting issues makes a lack of knowledge "absurd." Opp. at 29-32. These arguments, which are variations of the core operations doctrine (or "*Zucco* exceptions"), should be disregarded for three overriding reasons.

First, Plaintiff argues that because "Defendants spoke frequently in press releases and earnings calls about the company's revenues," the Court can simply assume that Defendants had knowledge of the alleged accounting problems. Opp. at 29. But to demonstrate scienter, Plaintiff must "allege with particularity that each Individual Defendant knew" of facts contradicting what they said publicly. *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at \*22 (N.D. Cal. Dec. 17, 2019). Plaintiff pleads no such facts here. In short, Defendants' high-level statements about Luna's financial performance are not the same as "specific admissions from top executives" that they were personally "involved in every detail" of the Company's revenue recognition practices. *Studen v. Funko, Inc.*, 2024 WL 2209686, at \*17 (W.D. Wash. May 16, 2024).[3]

Second, Plaintiff argues Defendants must have had access to the disputed information based on their positions. Opp. at 30-31. These are the same kind of vague allegations that the Ninth Circuit has repeatedly rejected. *Metzler Inv. GMBH v.*

---

[3] *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014), is also distinguishable. There, plaintiffs alleged that the defendant was a manager "directly responsible for" and who "would be among the first to know" of the challenged data, and who "specifically addressed" such data in her public statement. *Id.* at 572. And in reaching its decision, the court explicitly distinguished between that lower-level employee and, as here, a "CEO of a large enterprise, who may be removed from the details of a specific business line." *Id.*

- 6 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud.").

Finally, this is not one of the "rare circumstances" where the nature of "relevant fact[s] is of such prominence that it would be 'absurd' to suggest" Defendants were without knowledge of the matter. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008). Plaintiff attempts to argue otherwise by pointing to the Company's reporting of "unearned revenues" over the span of multiple quarters. Opp. at 7, 18. Plaintiff, however, alleges no facts about the nature of the revenue recognition errors and simply assumes with no basis that Luna reported unearned revenue. More importantly, Plaintiff has not alleged any facts demonstrating that Defendants were aware of or knowingly misapplied the relevant GAAP principles.

**F.  A Holistic Analysis Does Not Support Scienter.**

With no analysis of the AC's allegations whatsoever, Plaintiff baldly contends the fraudulent inference is the stronger one here. But as the court in *Ezzes* held, "[w]ithout particularized allegations that any single Defendant was intentionally fabricating the accounting misstatements, knew it was violating GAAP principles, or was deliberately reckless in not investigating . . . , the facts alleged are more indicative of the interpretation that the [Company] simply misreported" its revenue numbers. *Ezzes*, 2024 WL 895018, *15 (dismissing Section 10(b) claims for failure to allege a strong inference of scienter). Plaintiff nowhere identifies where in the AC any of these allegations exist. And, without them, the AC fails to allege scienter.

**II.   THE AC FAILS TO PLEAD THE NON-FINANCIAL CHALLENGED STATEMENTS ARE ACTIONABLE**

**A. Plaintiff Engages in Improper Puzzle Pleading.**

In response to Defendants' puzzle pleading argument (Mot. at 16-17), Plaintiff

- 7 -

seems to contend puzzle pleading is acceptable where a restatement has been announced (Opp. at 15), but Plaintiff cites no case for that proposition. Beyond that, Plaintiff asserts its block quotes were merely to provide "context." That misses the mark as well. Context does not transform the mystery of which statements Plaintiff alleges are false into a solved case. *Shnayder v. Allbirds, Inc.*, 2024 WL 2125598, at *1 (N.D. Cal. May 10, 2024) (declining to "guess" which statements were purportedly false). Rather than distinguishing *Shnayder*, Plaintiff incorrectly relies on *In re Intuitive Surg. Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014). The *Intuitive* Court held the complaint did not include puzzle pleading because it "precisely detailed each problematic statement, alleged that each statement is false and misleading, and alleged the reasons as to why each statement was false or misleading." *Id.* The AC does not meet this standard. It should be dismissed.

**B. Plaintiff Does Not Adequately Plead Falsity of the Non-Financial Statements.**

Defendants identified six statements for which the AC failed to allege why the statements were false with particularity as the PSLRA requires. Mot. at 17-18. Plaintiff's response seems to be that the announced intent to restate means the statements are false. Opp. at 13. But the identified six statements are ***not financial*** statements, so the announced intent to restate the Company's ***financial statements*** does not mean the non-financial statements are false. Moreover, Plaintiff nowhere attempts to explain how the AC alleges the falsity of the six statements. It does not. The non-financial challenged statements should be dismissed.

**C. The SOX/Internal Control Statements Are Non-Actionable.**

In response to Defendants' argument that the AC fails to allege the SOX/internal control statements are actionable, Plaintiff cites to certain paragraphs of the AC and concludes that he met the *Dearborn* standard for pleading an actionable opinion. Opp. at 20 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*, 856 F.3d 605 (9th Cir. 2017)). But the AC paragraphs to which

- 8 -

Plaintiff cites contain only Luna's public disclosures. AC, ¶¶ 92-100. Nowhere in those public disclosures are there any facts indicating that (a) any Defendant did not honestly hold the previously stated opinions about SOX/internal controls; (b) the SOX/internal control statements contain embedded statements of fact; or (c) the SOX/internal control statements omit facts necessary to make the opinion not misleading. The SOX and internal control statements should be dismissed.

**D. All Other Statements of Opinion and Puffery Are Non-Actionable.**

The Motion identified seven challenged statements that should be dismissed as opinion or puffery. Mot. at 20-21. Plaintiff first contends that puffery cannot be decided on a motion to dismiss. Opp. at 17. The Ninth Circuit disagrees. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060-61 (9th Cir. 2014) (affirming dismissal on puffery grounds). Beyond that, citing no authority, Plaintiff tries to explain how the challenged statements are not puffery. Opp. at 17-18. But, as Defendants explained in their Motion with citation to numerous Ninth Circuit cases, the challenged statements of generally positive phrases of "pleased" and "solid" are quintessential puffery that should be dismissed. *See* Mot. at 20-21.

**E. The Forward-Looking Statements Are Protected by the Safe Harbor.**

The Safe Harbor requires that the challenged forward-looking statements be dismissed. Mot. at 21-23. Neither of Plaintiff's two arguments stave off dismissal.

First, Plaintiff argues that the statements contain present statements. Opp. at 20-21. But the present statements to which Plaintiff refers are statements of the assumptions underlying the forward-looking statements. The Safe Harbor protects "any statement of the assumptions underlying or relating to any statement" of "a projection of revenues, income" or "the plans and objectives of management for future operations." 15 U.S.C. § 78u-5 (i). The Safe Harbor applies.

Second, Plaintiff contends the cautionary language was not meaningful because the risks had already materialized. Opp. at 21-22. But, as the court held in *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *7 (N.D. Cal. Feb. 1, 2021), that

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

argument fails, where, as here, "Plaintiff alleges no facts to show that the risks had materialized" at the time the forward-looking statements were made. In any event, the forward-looking statements are required to be dismissed from the AC because Plaintiff fails to allege any facts giving rise to the inference that any Defendant had ***actual*** knowledge of falsity, as the Safe Harbor requires. *Id.*; *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 (9th Cir. 2010) (holding forward-looking statements are protected by the PSLRA Safe Harbor if they are made without actual knowledge of their falsity). The challenged forward-looking statements should be dismissed.

## III.   THE AC FAILS TO PLEAD SCHEME LIABILITY

Citing *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 4207191 (E.D.N.Y. Oct. 31, 2007), Plaintiff contends he has alleged scheme liability under Rule 10b-5(a) and (c). Opp. at 33. This case is nothing like *Comverse*. In *Comverse*, the court held the complaint alleged a disclosure claim based on accounting irregularities that were "clearly tied to [an] alleged backdating scheme." 2007 WL 4207191, at II.B.1.b. In connection with that backdating scheme, Comverse's CFO and General Counsel pled guilty to criminal conspiracy to commit securities fraud, and Comverse's CEO fled to Namibia and was considered a fugitive by the FBI. *Id.* at I.D. Nothing remotely similar is alleged here. Further, as argued in the Motion, the scheme claim fails because it is simply a "recast of Plaintiff's Rule 10b-5(b) claim." *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at *15 (C.D. Cal. Aug. 9, 2016). The scheme liability claim should be dismissed.

## IV.   THE AC FAILS TO ALLEGE A CONTROL PERSON CLAIM

Because the AC fails to allege a Section 10(b) claim, the control person claim under Section 20(a) should likewise be dismissed. *See Primo v. Pacific Biosciences of California, Inc.*, 940 F. Supp. 2d 1105, 1131 (N.D. Cal. 2013).

## <u>CONCLUSION</u>

For these reasons and those set forth in the Motion, the Amended Complaint should be dismissed.

- 10 -

Dated: February 11, 2025

/s/ Lisa R. Bugni
Lisa R. Bugni (SBN 323962)
**KING & SPALDING LLP**
533West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355
Fax: (213) 443-4310
lbugni@kslaw.com

Jessica Corley (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree St. NE
Atlanta, GA 30309
Tel: (404) 572 4600
Fax: (404) 572 5100
jpcorley@kslaw.com

*Attorneys for Defendant Luna Innovations Incorporated*

/s/ Stephen L. Ascher
Stephen L. Ascher
Charles D. Riely
**JENNER AND BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036
Tel: (212)891-1600
sascher@jenner.com
criely@jenner.com

Kelly Marie Morrison
**JENNER AND BLOCK LLP**
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Tel: (213) 239-5100
Fax: (213) 239-5199
kmorrison@jenner.com

*Attorneys for Defendant Scott A. Graeff*

- 11 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS