Emily E. Renshaw (*pro hac vice*)
emily.renshaw@morganlewis.com
Matthew C. McDonough (*pro hac vice*)
matthew.mcdonough@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA  02110-1726
Tel:   +1.617.341.7700
Fax:   +1.617.341.7701

Robert O'Leary (SBN 284879)
bob.oleary@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1 415 442 1000
Fax:    +1 415 442 1001

*Attorneys for Defendant*
*George Gomez-Quintero*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| In re LUNA INNOVATIONS INCORPORATED SECURITIES LITIGATION,<br><br>This Document Relates to ALL ACTIONS | Master File No. 2:24-cv-02630-CBM-KS<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT GEORGE GOMEZ-QUINTERO'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:      March 11, 2025<br>Time:     10:00 a.m.<br>Judge:    Hon. Consuelo B. Marshall |

MORGAN, LEWIS &
BOCKIUS LLP

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................... 3

I.   PLAINTIFF'S SECTION 10(b) AND RULE 10B–5(b) CLAIMS SHOULD BE DISMISSED. ........................................................................ 3

    A.   Plaintiff Fails to Allege the Falsity of Mr. Gomez-Quintero's Statements. ......................................................................................... 3

        1.   The Company Did Not Admit That Mr. Gomez-Quintero's Statements Were False. ........................................... 3

        2.   The SOX Certification Is a Statement of Opinion Not Adequately Alleged to Be False Under *City of Dearborn*. ........ 5

    B.   Plaintiff Fails to Allege Facts Giving Rise to a Strong Inference That Mr. Gomez-Quintero Made Any Challenged Statement With Scienter .................................................................................... 7

II.  PLAINTIFF'S RULE 10B-5(a) AND (c) CLAIMS SHOULD BE DISMISSED. ............................................................................................... 8

III. PLAINTIFF'S SECTION 20(a) CLAIMS SHOULD BE DISMISSED. ..... 10

CONCLUSION .............................................................................................. 10

MORGAN, LEWIS &
BOCKIUS LLP

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atlas Mining Co., Sec. Litig.*,
670 F. Supp. 2d 1128 (D. Idaho 2009)...................................................................5

*In re Citigroup Sec. Litig.*,
2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023)........................................................6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017)..........................................................5, 6

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024)...............................................................................3

*In re Comverse Tech., Inc.*,
2007 WL 4207191 (E.D.N.Y Oct. 21, 2007)..........................................................9

*Daniels v. SCME Mortg. Bankers, Inc.*,
680 F. Supp. 2d 1126 (C.D. Cal. 2010)..............................................................7, 8

*Dias v. Spartan Micro, Inc.*,
2023 WL 2629870 (C.D. Cal. Mar. 3, 2023).........................................................9

*In re Gilead Sci. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008).................................................................................3

*Jackson v. Netflix, Inc.*,
506 F. Supp. 3d 1007 (C.D. Cal. 2020)..................................................................7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ..................................................................................................3

*In re Metawave Commc'ns Corp. Sec. Litig.*,
298 F. Supp. 2d 1056 (W.D. Wash. 2003).............................................................5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008).................................................................................8

*New England Carpenters Guaranteed
Annuity & Pension Funds v. DeCarlo*,
80 F.4th 158 (2d Cir. 2023)....................................................................................6

i

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
  2016 WL 6782768 (C.D. Cal. Aug. 9, 2016) .......................................................... 10

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) .................................................................. 8

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters*
  *Pension Plan v. First Solar Inc.*,
  2023 WL 4161355 (D. Ariz. June 23, 2023) .......................................................... 7

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ......................................................................... 2, 7

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ........................................................................... 10

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
  2011 WL 1253250 (D. Ariz. Mar. 31, 2011) .......................................................... 5

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................ 7

MORGAN, LEWIS &
BOCKIUS LLP

ii

GOMEZ-QUINTERO REPLY ISO MOTION
TO DISMISS
CASE NO. 2:24-CV-02630-CBM-KS

George Gomez-Quintero files this Reply in support of his Motion to Dismiss the Amended Consolidated Complaint (ECF #71), with prejudice.[1]

### PRELIMINARY STATEMENT

Plaintiff's Opposition Brief (or "OB") concedes the points dictating the dismissal of all claims against Mr. Gomez-Quintero.

First, the Amended Complaint frivolously alleges that Mr. Gomez-Quintero is liable, both directly and as a "control person," for statements made before he joined the Company in October 2023. Plaintiff confirms the infirmity of those allegations. *See* OB at 13 ("Plaintiff agrees" that Mr. Gomez-Quintero "should not be liable for false statements . . . made before [he] joined the Company); 35 (same as to "control person" claims). Thus, all claims pled against Mr. Gomez-Quintero concerning statements prior to October 17, 2023 must be dismissed, with prejudice.

What remains are Plaintiff's allegations that Mr. Gomez-Quintero made two false statements on November 14, 2023:  one concerning the relatively strong performance of Luna's "Comms Test" business for Q3 2023 (Am. Cmplt. ¶ 87); and Mr. Gomez-Quintero's opinions contained within a SOX Certification (*id.* ¶ 89). But Plaintiff fails to plead with anything approaching the required specificity that these statements were false when made, or with the required particularity that Mr. Gomez-Quintero made them with scienter. Rather than defending the Amended Complaint's paper-thin, unsupported allegations against Mr. Gomez-Quintero,[2] Plaintiff resorts to fabricating new supposed facts in his Opposition, and stretching beyond recognition those few allegations that actually appear in the Amended Complaint.

Regarding falsity, Plaintiff does not identify any specific allegations supporting that the two November 14, 2023 statements were false. Rather, he claims that the Company admitted those statements were false. *See* OB at 13. But the

---

[1] Capitalized terms not defined herein are defined in the Moving Brief, or "MB." Luna is concurrently filing a Reply in support of its Motion to Dismiss. Mr. Gomez-Quintero joins Luna's Reply, and incorporates it here by reference.
[2] *See* MB at 2-3 (compiling the Amended Complaint's few allegations concerning Mr. Gomez-Quintero).

Company did no such thing. The Company simply stated that its financial results should not be relied upon. It did not admit that any specific statement was false, let alone Mr. Gomez-Quintero's two challenged statements.

Regarding scienter, Plaintiff does not identify any particular fact suggesting that Mr. Gomez-Quintero knew (or recklessly disregarded) that either of his challenged statements was false when he made them. Rather, Plaintiff goes all-in on a new circumstantial allegation that does not appear anywhere in the Amended Complaint: that the Company "deci[ded] to financially penalize [Mr. Gomez-Quintero] upon termination as a result of an internal investigation." OB at 34. It is little wonder that allegation does not appear in the Amended Complaint—it is utterly false and libelous. Mr. Gomez-Quintero was not terminated;[3] he voluntarily resigned, as the Company publicly disclosed at the time. *See* Am. Cmplt. ¶ 106. Nor was he "financially penalize[d]"; after a very short stint with the Company, he simply was not entitled to any severance (or other benefits, as Luna's disclosure stated). The very documents on which Plaintiff relies reflect that these new allegations are unfounded. *See infra* at 7-8. The Court should reject Plaintiff's use of his Opposition to fabricate allegations that are not only absent from the Amended Complaint,[4] but also false.

For these and the other reasons discussed herein, in Mr. Gomez-Quintero's Motion to Dismiss, and in the incorporated Luna briefing, the claims against Mr. Gomez-Quintero should be dismissed, with prejudice.

---

[3] Plaintiff puzzlingly also refers in his Opposition to Mr. Gomez-Quintero's voluntary departure from Luna as a "retirement." *Id.* at 25.

[4] *See Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'[N]ew' allegations contained in [plaintiffs'] opposition…are irrelevant for Rule 12(b)(6) purposes….[A] court may not look beyond the complaint to a plaintiff's moving papers [*sic*], such as a memorandum in opposition to a defendant's motion to dismiss") (citations omitted).

# ARGUMENT

## I.   PLAINTIFF'S SECTION 10(b) AND RULE 10b–5(b) CLAIMS SHOULD BE DISMISSED.

As an initial matter, Plaintiff severely understates the pleading standard.  The PSLRA unquestionably requires securities fraud plaintiffs to specify each allegedly misleading statement and the basis for its alleged falsity, and to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006).  Nor is it disputable that Rule 9(b) requires that a plaintiff plead with particularity the "who, what, when, where, and how" of the alleged fraud.  *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024).  Tacitly conceding that he cannot meet these standards, Plaintiff shies away from them, citing only Rule 12(b)(6) and an inapposite case involving loss causation.  *See* Opp. at 10 (citing *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008)).[5]  Plaintiff cannot avoid the applicable pleading standards by ignoring them.

### A.   Plaintiff Fails to Allege the Falsity of Mr. Gomez-Quintero's Statements.

#### 1.   The Company Did Not Admit That Mr. Gomez-Quintero's Statements Were False.

Plaintiff fails to allege any specific facts regarding the falsity of either of Mr. Gomez-Quintero's November 14, 2023 statements concerning: (a) the Company's financial performance metrics for Q3 2023 and that a basis for those metrics was the relative strength of the Company's "Comms Test" business (Am. Cmplt. ¶ 87); or (b) his contemporaneous belief in the effectiveness of the Company's internal controls over financial reporting at the time he signed a SOX certification (Am. Cmplt. ¶ 89).  *See* MB at 7-8.

---

[5] In *Gilead*, the Ninth Circuit declined to decide whether Rule 9(b) or Rule 8(a) applied to allegations of loss causation—an issue not relevant here.  536 F.3d at 1056.

MORGAN, LEWIS & BOCKIUS LLP

3

Conceding the point, Plaintiff protests that he need not plead any such specific facts because the Company supposedly "*admitted* that these [two] statements were false." OB at 13 (emphasis in original); *id.* at 18 (same). As support for this bold contention, Plaintiff quotes from the Company's April 19, 2024 statement that:

> [A]ny previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements should no longer be relied upon.

OB at 13 (quoting Am. Cmplt. ¶ 101), *see also* OB at 9. The Company cautioned investors not to rely on such prior financial statements because, it said:

> "based on ***preliminary*** findings" of "an independent review…of ***certain*** revenue recognition matters in connection with the Company's previously issued financial statements," the Company's management and advisors had concluded that prior financial statements "should no longer be relied upon and should be restated due to the recognition of revenue with respect to ***certain*** transactions in those periods that did not qualify for revenue recognition under U.S. generally accepted accounting principles."

Am. Cmplt. ¶ 101 (emphasis added).

No honest reader of the Company's April 19 statement could conclude that the Company "admitted" that any specific prior statement was false, let alone every statement made on the Company's behalf. The Company simply stated that it was in the process of reviewing issues related to revenue recognition with respect to certain, unidentified transactions, and given preliminary findings of that review, investors were cautioned not to rely on prior financial statements.

The Company's April 19 statement said nothing about the falsity of Mr. Gomez-Quintero's statement concerning the relative performance of its "Comms Test" business in Q3 2023. It did not mention the "Comms Test" business, retract the statement that its performance was relatively strong that quarter, or admit that the Company had not, in fact, experienced with respect to the Comms Test business a

"rebound in sales to [its] government and defense customers" as compared to the "headwinds [the Company] mentioned last quarter." Am. Cmplt. ¶ 87. The Company also never stated that Mr. Gomez-Quintero did not honestly hold his belief that the Company's internal controls over financial reporting were effective at the time he signed his SOX certification, and Plaintiff does not allege otherwise.

At bottom, Plaintiff asks the Court to relieve him of his duty to plead specific facts concerning the falsity of challenged statements because the Company announced its intent to restate certain prior financial results. Neither the PSLRA nor the caselaw provides any such exception. Indeed, courts regularly hold that the fact of a restatement (let alone the mere announcement that a restatement is forthcoming) does not automatically render false all prior statements related in any way to a company's finances. *See In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1079 (W.D. Wash. 2003) ("Plaintiff's contention that Metwave's restatement is an admission that Defendants issued false and misleading financial reports is without merit"); *In re Atlas Mining Co., Sec. Litig.*, 670 F. Supp. 2d 1128, 1133-34 (D. Idaho 2009) (announced intention to restate financial statements is not admission that all prior financial statements were materially false); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 2011 WL 1253250, at *23 (D. Ariz. Mar. 31, 2011) ("It is not enough to simply allege that a given statement is false and misleading and then baldly rely upon a restatement.").

### 2. The SOX Certification Is a Statement of Opinion Not Adequately Alleged to Be False Under *City of Dearborn*.

Plaintiff now concedes what his Amended Complaint refused to: that Mr. Gomez-Quintero's November 14, 2023 SOX Certification was a statement of opinion, not an ironclad guarantee of the effectiveness of the Company's internal controls over financial reporting. *See* OB at 20 & n.6 (acknowledging that the SOX certification was a "stated opinion").

MORGAN, LEWIS &
BOCKIUS LLP

5

GOMEZ-QUINTERO REPLY ISO MTD
CASE NO. 2:24-CV-02630-CBM-KS

Opinion statements are rendered false or misleading only if: (i) "the speaker did not hold the belief she professed"; (ii) the opinion relies upon a "supporting fact" supplied by the speaker that is untrue; or (iii) the opinion omits facts necessary to make it not misleading. MB at 7-8 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017)).

Plaintiff claims he meets the *City of Dearborn* standard, but a review of the Amended Complaint tells a different story. Plaintiff pleads not a single fact supporting that Mr. Gomez-Quintero did not actually hold the belief that the Company's internal controls were effective as of November 14, 2023 (less than one month after he joined the Company). Plaintiff likewise identifies no allegedly false embedded statements of fact, or "facts going to the basis of [Mr. Gomez-Quintero's] opinion," the omission of which rendered his opinions misleading. *City of Dearborn*, 856 F.3d at 615. If the Amended Complaint contained any such allegations, Plaintiff would have cited them in his Opposition Brief. Instead, he simply recites the *City of Dearborn* standard and asks the Court to take his word for it. *See* OB at 20. Highlighting the insufficiency of the Amended Complaint in this regard, Plaintiff points the Court to Paragraphs 92-100. *See id.* Tellingly, Mr. Gomez-Quintero's name ***does not appear once*** in those paragraphs and they have nothing to do with him or his prior role at Luna. Plaintiff pleads nothing to support the falsity of Mr. Gomez-Quintero's SOX certification, and his Opposition Brief proves the point.[6]

---

[6] Plaintiff fails to address Mr. Gomez-Quintero's authority on this point. *See* MB at 8 (citing *In re Citigroup Sec. Litig.*, 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) and *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023)). As those cases hold, "Post-Class Period identification of control deficiencies and misstatements"—all Plaintiff pleads—is patently insufficient to plead the falsity of an executive's opinions concerning the effectiveness of internal controls at the time the statement was made. *In re Citigroup*, 2023 WL 2632258, at *20; *DeCarlo*, 80 F.4th at 176 (the company's restatement, "standing alone, does not mean that the original certified opinions were disingenuous. Nor is a genuinely held opinion that 'turned out to be wrong' necessarily actionable").

**B.  Plaintiff Fails to Allege Facts Giving Rise to a Strong Inference That Mr. Gomez-Quintero Made Any Challenged Statement With Scienter.**

The Opposition Brief confirms that the Amended Complaint does not contain any specific facts supporting that Mr. Gomez-Quintero actually reviewed information contrary to either of the statements attributed to him, or that he otherwise had actual knowledge that either of those statements was false when made.  Rather, Plaintiff advances a potpourri of conclusory and improper "group" scienter theories.[7]  *See* OB at 22-32.  The Moving Brief and Luna's briefing address why none of those theories suffices, individually or collectively.

The only argument Plaintiff makes concerning Mr. Gomez-Quintero specifically is that his scienter may be inferred because the Company "exact[ed]" a "financial penalty" from him in connection with his "termination."  OB at 27, 34.  This baseless allegation does not appear in the Amended Complaint and, accordingly, must be disregarded.  *See Schneider*, 151 F.3d at 1197 n.1.[8]

In any event, the allegation is contrary to the facts alleged, the judicially noticeable public record, and the truth.  The truth is that, after less than seven months with the Company, Mr. Gomez-Quintero was not entitled to severance or any other benefits upon his voluntary resignation, and nothing alleged suggests otherwise.

Mr. Gomez-Quintero was hired as CFO effective October 17, 2023.  Am. Cmplt. ¶ 14.  He voluntarily resigned just over six months later, effective May 1, 2024.  *Id*.  Announcing his resignation, the Company stated that "Mr. Gomez-Quintero is ***not entitled*** to receive any severance or other benefits upon his separation

---

[7] *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007) ("Group pleading 'did not survive the PSLRA.'"); *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *4 (D. Ariz. June 23, 2023) (rejecting "group pleading and generalized scienter allegations").

[8] *See also Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1017 (C.D. Cal. 2020) (dismissing complaint and giving no credit to facts alleged in opposition brief); *Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1130 (C.D. Cal. 2010) ("[T]he Court cannot treat factual statements in the Opposition as though they were contained in the Complaint itself.").

from the company." *Id.* ¶ 106 (emphasis added). The Company did not say that it had terminated Mr. Gomez-Quintero (because it did not), or that it was exacting a "financial penalty" against him by withholding severance compensation to which he was entitled.[9] The Company's statement concerning Mr. Gomez-Quintero's resignation simply does not support the inference Plaintiff asks the Court to draw.

The Company's statement that Mr. Gomez-Quintero was not ***entitled*** to severance is also entirely consistent with the Company's description of his employment agreement in its public announcement of his hiring.[10] As the Company described in a Form 8-K, Mr. Gomez-Quintero's employment agreement entitled him to severance and other benefits upon voluntary resignation only if the Company had given him "Good Reason" (a defined term[11]). *See id.* at 4. As defined, no "Good Reason" existed, or has been alleged to exist, at the time of Mr. Gomez-Quintero's voluntary departure. In short, the public record indicates that Mr. Gomez-Quintero was not contractually entitled to receive severance or other benefits upon a voluntary resignation, just as the Company disclosed upon his departure. The fact that he did not receive benefits to which he was not entitled cannot possibly suggest a "financial penalty" was exacted upon him and does not give rise to any inference of scienter.

## II.    PLAINTIFF'S RULE 10B-5(a) AND (c) CLAIMS SHOULD BE DISMISSED.

The Amended Complaint alleges that the "scheme" in which Defendants allegedly engaged was "the Company making false statements to the market about the true financial performance of Luna and the reasons for that performance." Am.

---

[9] Nor did the Company state that Mr. Gomez-Quintero had "engaged in conduct that constituted 'Cause' under [his] employment agreement." *Id.*

[10] *See* Declaration of Matthew C. McDonough ("McDonough Decl."), Ex. 1 (Oct. 17, 2023 Form 8-K).

[11] Although Mr. Gomez-Quintero's full employment agreement was ultimately not filed publicly, the description of that agreement is consistent with the publicly filed employment agreement of the Company's prior CFO, which included the same restrictions and definitions. McDonough Decl., Ex. 2 at § 6.1 (Mar. 13, 2020 Form 10-K, Ex. 10.29). Courts may take judicial notice of such SEC filings, whose accuracy "cannot reasonably be questioned." *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1348-49 (C.D. Cal. 2014); *see Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008).

Cmplt. ¶ 143. This classic misrepresentation claim is duplicative of Plaintiff's Rule 10(b)-5(b) claim. Because he alleges no "scheme" "beyond…misrepresentations or omissions,'" Plaintiff's "scheme" claims should be dismissed. *Dias v. Spartan Micro, Inc.*, 2023 WL 2629870, at *8 (C.D. Cal. Mar. 3, 2023). *See* MB at 12-13.

Rather than address this argument head-on, Plaintiff pivots and offers yet more allegations absent from the Amended Complaint—specifically, that "Defendants' failure to correct its financial statements," and to "accept delisting from Nasdaq in lieu of coming clean about its series of false statements" is "evidence of its fraudulent scheme." OB at 33. This pivot does not save Plaintiff's claims.

First, it is not clear how such post-Class Period conduct could constitute a "scheme" on which Plaintiff relied to purchase Luna securities. Second, the new allegations are directed at the Company, not Mr. Gomez-Quintero. Mr. Gomez-Quintero resigned from the Company in March 2024. He has had nothing to do with the Company's subsequent alleged "failure to correct its financial statements" or to "accept delisting." *Id.* Third, the *Comverse* case Plaintiff cites involved allegations of a scheme entirely separate from the company's public financial statements. Specifically, the plaintiffs there alleged that defendants fraudulently backdated stock options to obtain artificially low exercise prices "thus creating an 'instantaneous paper profit.'" *In re Comverse Tech., Inc.*, 2007 WL 4207191, at 2 (E.D.N.Y Oct. 21, 2007). They also alleged that company executives presented the Compensation Committee fictional employee names as part of a scheme to obtain illicit stock options. *Id.* While these schemes allegedly bled into the company's public disclosures in the form of understated compensation expenses, they were separate and apart from the company's alleged misrepresentations. *See id.*

There are no such separate "scheme" allegations here, let alone any such allegations concerning Mr. Gomez-Quintero. Plaintiff's only argument as to Mr. Gomez-Quintero is to repeat his false "scienter" allegation concerning Mr. Gomez-Quintero's supposed "termination" and "financial penalty" (OB at 34),

MORGAN, LEWIS &
BOCKIUS LLP

GOMEZ-QUINTERO REPLY ISO MTD
CASE NO. 2:24-CV-02630-CBM-KS

which has nothing to do with whether there was a "scheme" separate from alleged misrepresentations. *See supra* at 7-8. As in *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at *15 (C.D. Cal. Aug. 9, 2016), Plaintiff's "scheme" claims here are merely a "recast" of his misrepresentation claims. Plaintiff's proclamation that they are not (OB at 34) does not change that fact.

### III.   PLAINTIFF'S SECTION 20(a) CLAIMS SHOULD BE DISMISSED.

Plaintiff concedes that Mr. Gomez-Quintero cannot be liable for statements made prior to his joining the Company in October 2023. *See* OB at 35 ("Plaintiff agrees" that Mr. Gomez-Quintero "was not a 'control person' prior to his arrival at the Company."). Plaintiff also concedes that the Section 20(a) claim against Mr. Gomez-Quintero concerning his oral "Comms Test" statement should be dismissed with prejudice because, as the maker of the statement, Mr. Gomez-Quintero did not control another in making it. *See* OB at 36 n.14.

The remaining Section 20(a) claims should be dismissed, too, because Plaintiff fails to plead that Mr. Gomez-Quintero exercised actual control over any other challenged statement. All that Plaintiff relies on is Mr. Gomez-Quintero's role as CFO. But, "[t]he fact that a person is a CEO or other high-ranking officer within a company does ***not*** create a presumption that he or she is a controlling person." *SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011). Even if Mr. Gomez-Quintero could be said to have exercised control over the financial results of the Company for the one quarter he was there, it is a leap unsupported by Plaintiff's allegations to suggest that he controlled all other Company statements, including those by the Company's longtime CEO. *See* Am. Cmplt. ¶ 86.

### CONCLUSION

For all of the reasons set forth herein, in Mr. Gomez-Quintero's Motion, and in Luna's incorporated briefing, all claims against Mr. Gomez-Quintero should be dismissed, with prejudice.

Dated:  February 11, 2024

MORGAN, LEWIS & BOCKIUS LLP

By:_____

Emily E. Renshaw (*pro hac vice*)
emily.renshaw@morganlewis.com
Matthew C. McDonough (*pro hac vice*)
matthew.mcdonough@morganlewis.com
One Federal St.
Boston, MA 02110-1726
Tel: (617) 341-7700
Fax: (617) 341-7701

Robert H. O'Leary (SBN 284879)
bob.oleary@morganlewis.com
One Market
Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Tel: (415) 442-1452
Fax: (415) 442-1001

*Attorneys for Defendant*
*George Gomez-Quintero*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant George Gomez-Quintero, certifies that this Memorandum complies with the 10-page limit set by Court order dated April 12, 2024 (ECF #8).

_____
Emily E. Renshaw